Field vs. Milburn.

---

---

### FIELD vs. MILBURN.

1. An execution is placed in the hands of a constable; after it is received by the constable, but before it is levied, an attachment is issued, and levied by the sheriff upon the goods of the defendant in the execution: held, that the attachment will hold against the execution.

2. Where there are two executions against the same defendant, the lien of the executions, as between the execution creditors, attaches from the *levy*, and not from the time at which they went into the hands of the officer.

### ERROR to St. Louis Circuit Court.

FIELD, *pro se.*

The only question involved in the case is understood to be, whether the delay of the constable to levy the execution in favor of Field, had the effect to postpone it to the attachment?

And it is insisted, that no delay of the officer not procured or directed by the party, can have the effect to deprive the latter of his lien; 5 Cowen, 390; 12 Wend. 405; 4 Rawle, 376; 5 Watts, 302.

Nor can it make any difference that the party has passively acquiesced in the delay—see the cases cited above—particularly when, as in the present case, the execution at the time of the attachment had still a long time to run.

And it is conceived that the policy of the law in enlarging the term of justices' executions, was to secure to debtors the very indulgence on the part of officers, which is complained of by the attaching creditor.

A HAMILTON, for Defendant.

1. This is not the ordinary case of settling priorities, nor one which

authorizes a court to interfere summarily. The parties should be left to litigate their rights by suit; 4 Cowen, 461.

2. No surplus is shown beyond what was necessary to satisfy the attachments, and the party has his remedy against the officer for his neglect to levy within a reasonable time, and in permitting the defendant in the execution to sell and dispose of his property to an amount indefinitely beyond what would have satisfied the debt to be collected; 9 Mo. 41.

3. Here is a contest between creditors claiming under process issuing from different jurisdictions. The maxim of *vigilantibus non dormientibus legis subvenient*, applies; Payne vs. Drew, 4 East. 538, cited in 9 Mo. 134; 19 Wend. 495; Devereaux & Beatty's N. C. Rep. 456.

McBRIDE, J., delivered the opinion of the court.

On the 24th November, 1844, Field recovered judgment before a justice of the peace of St. Louis township against John Berlin for the sum of one hundred and fifty dollars; debt and costs. On the 27th November execution issued on this judgment, which was on the same day delivered to the constable of St. Louis township to be executed. Berlin was at the time a merchant, owning a stock of goods and carrying on his business, and so continued selling at an average of thirty dollars per day, with the knowledge of the plaintiff and the constable, up to the 21st January, 1845, when attachments were issued out of the office of the circuit court of St. Louis county, at the suit of other creditors ; and on these writs all of Berlin's property was attached. Shortly afterwards orders of sale were made by the circuit court, and the property was sold by the sheriff, Milburn. On the 25th February the constable returned on the execution in favor of Field, "No goods except in the hands of the sheriff, which he refuses to relinquish."

On the 25th of February, Field filed his motion in the circuit court, asking for an order on the sheriff to pay over to him, out of the proceeds of the sale of Berlin's property, the amount of his execution against Berlin, returned by the constable as above. The sheriff objected to the court entertaining the motion, but the court overruled his objection and proceeded to hear the same, and after the hearing overruled the motion of Field, to which opinion of the court Field excepted, and has brought his case here by writ of error.

The principal question involved in the case is, whether the delay of the constable to levy the execution in his hands in favor of Field, had the effect to postpone it to the attachments.

For the sheriff, it was contended in the circuit court, and has been relied upon here, that this not being an ordinary case of settling priorities, the court was not authorized to interfere summarily, but that the parties should be left to litigate their rights by suit. For this principle we are referred to 4 Cowen, 461, where it is said that the supreme court will not interfere summarily, and direct how money levied on execution by a constable or other person, *not their own officer*, shall be applied.

It would appear scarcely necessary for the court to make such an avowal, inasmuch as the power of a court in such matters has never been supposed to extend beyond its own officers. They are presumed to act under the immediate control and coercion of the court; and hence the court have always claimed and excercised the power of compelling them to discharge their duties toward all parties interested, and that too in a summary manner. The sheriff having money in his hands, made by virtue of the process of the circuit court, holds it subject to the order of the court, and may be required to pay it over to the party ascertained by the court to be entitled thereto. And it is not necessary that the individual making application to the court for the exercise of its power, should be a party in the process emanating from the court.

The execution of Field in the hands of the constable of St. Louis was prior in date and and delivery to the attachment in the hands of the sheriff of St. Louis, but the latter were executed first, and it is therefore urged that the constable having failed to execute the process in his hands, when he might have done so without any hinderance from the sheriff, he has become liable to an action at the suit of Field. The constable may by unnecessary delay in the execution of process, lay himself liable to the plaintiff in the action; but the fact of the constable being liable to an action, by no means determines the right of the plaintiff to pursue his remedy against the property of the defendant in the execution. There is no propriety for divesting the plaintiff in an execution of any of his legal rights against his dsbtor, because of the *laches* of the officer, unless he has in some way superinduced it.

The facts in this case do not impeach the conduct of the plaintiff. He sued out his execution, and placed it in the hands of the proper officer in due time; and the fact that the defendant, Berlin, had ample means out of which the plaintiff could make his debt, rendered it unnecessary that any special diligence should be used, or attention given by the plaintiff to the subject. The execution had still a considerable time to run when the attachments were levied.

Field vs. Milburn.

Having disposed of the two preliminary questions raised by the counsel for the sheriff, we will proceed to inquire whether the failure of the constable to levy the execution of Field until after the levy made by the sheriff under the attachments, had the effect of postponing or defeating the lien of the execution. And here some difficulty presents itself, growing out of the conflict of authority on the subject. The common law doctrine appears to be well settled, that a *fieri facias* bound the goods of the defendant from its *teste ;* that is, the writ bound the goods as against the defendant himself and all claiming by assignment from him; so that a *bona fide* sale, except in market overt, did not protect them from a *fieri facias tested* before, although not issued or delivered to the sheriff until after the sale; Cro. Eliz. 174; Cro. Ja. 451. The general property in the goods remains, however, in the defendant, subject to the lien, and is not affected until an actual levy by the officer, who thereby acquires a special property; Yelverton, 44. But if the goods whilst in the possession of the defendant, and before the levy of the *fieri facias,* are seized by virtue of a junior writ and sold, the purchaser acquires a good title free from the prior lien; 4 East. 540; 1 Ld. Ray, 252; 1 Salk. 320. In this case no question is raised, nor can any doubt exist as to the validity of the titles acquired by the purchasers under the attachment sale made by the sheriff. The plaintiff in the execution recognizes the validity of the sale, and asked the circuit court to direct its officer, who still had the proceeds of the sale in his hands, to pay over to him an amount sufficient to satisfy his execution against defendant Berlin. This application is based upon the supposed preference which he has in consequence of his prior lein. It becomes then necessary to inquire into the object and character of liens springing up under executions. By our statute the lien on the goods and chattels of the defendant, attaches from and after the delivery of the writ to the proper officer to be executed; Sess. Acts, 1838-39. Is this statutory lien different in its objects from the common law lien ? If it is not, then we are at no loss to ascertain its purpose. It was intended to prevent the defendant from alienating his estate, and thereby defeating the plaintiff, and not for the purpose of creating priorities between judgment or execution creditors. The general property being in the defendant, and each execution creditor having a lien, the law does not interfere to divest from the most vigilant the advantage which he has obtained, by having first obtained an actual levy of his execution upon the goods of the defendant. By a leading case on this subject, Payne vs. Drew, 4 East. 545, it was held, "that where there are several authorities equally competent to bind the goods of the party

when executed by the proper officer, that they should be considered as effectually and for all purposes bound by the authority which first actually attaches upon them in point of execution, and under which an execution shall have been first executed." The correctness of this principle has been recognized by the supreme court of North Carolina, in the case of Jones vs. Judkins, 3 Devereaux & Beatty's R. 456. Also by the court of appeals in Kentucky, who say, in Kibby vs. Higgin, 3 J. J. Mar. 212, "As between execution creditors, it is not the date of the execution nor of its delivery to the officer, but the date of the levy which gives priority of lien," and refer to the case of Tabb vs. Harris, 4 Bibb, 29, and the authorities there cited. The court proceed to say, "We not only admit the authority of these cases, but approve them as rational and just. The only object of attaching a lien to an execution, is to prevent the debtor from defeating the creditor by alienating or embarrassing his estate. The reason of the law in such a case does not apply to a competition between execution creditors, and 'cessante ratione cessat lex.' Moreover, it is but sheer justice to give the preference to the creditor, who, by his superior industry and vigilance, shall have procured the first levy on the debtor's estate."

In the case now before us, there were two writs in the hands of different officers, equally competent to bind the goods of the defendant we must therefore award the spoils to him who had his writ first executed.

The foregoing view of the subject commends itself to our favor, as it will tend greatly to prevent that species of favoritism and fraud practiced frequently by favorite creditors, who cover and protect the property of their debtor against other creditors, by keeping alive the older execution.

The cases in the New York Reports, to which reference was made by the plaintiff in the execution, and which appear to conflict with the cases above referred to, are not in our estimation sufficient to overturn the principles settled in the cases referred to in this decision, and which appear to us to be founded on sound principles of equity.

Judge NAPTON concurring, the judgment of the circuit court is affirmed.

Sudge SCOTT dissenting.