M. J. MORGAN, claimant, plaintiff in error, vs. SIMS & NANCE, defendants in error.

[1.] What a claimant says at the time the Sheriff levies on property, as belonging to another person, respecting that property, is *admissible* in evidence.

[2.] Evidence that the defendant in execution was in possession of property levied on and claimed by a third person, down to a short time before the Court, at which the judgment was obtained, on which the execution was issued, and had been for sometime, is sufficient to cast the *onus* on the claimant to show his title.

[3.] Property is bound from the *signing* of the judgment, and does not relate back to the first day of the term. The doctrine of relation does not apply so as to do a wrong, or lay a charge upon a person who is not a party.

Claim, from Sumter county, and motion for new trial. Tried before Judge ALLEN, at March Term, 1858.

Sims & Nance sued and obtained execution against the firm of Mims & Wadsworth, and the same was levied on " the house and lot lately occupied by defen'dants at Americus, the same being part of lot No. 1, in the 27th, also, the front of lot No. 2, in square letter H. in Americus, 75 feet more or less back, also, on that part of lot No. 1, in square H. in said town, on which is. the grocery store lately occupied by Mims & Wadsworth, also, on the stock of goods, wares, &c., found in the dry goods store on lot 2, in letter H.; all levied on as the property of Mims."

Mitchell J. Morgan put in his claim to the property levied on, and on the trial of said claim, the jury rendered the following verdict:

" We find the middle or dry goods store, or the house latey occupied by Mims, with the lot on which it is situated, subject to this *fi. fa.*, with ten per cent damages; the other two lots levied on we find not subject to said *fi. fa.*" Whereupon, the claimant moved for a new trial on the following grounds:

1st. Because the Court erred in refusing to allow Wheeler, the plaintiff's witness, to answer the question, " if, at the time he testified as having seen defendant in the house, Jared Tomlinson and Mims did not both say the goods were Tomlinson's, or if Tomlinson did not give orders to the clerks, and they obeyed him."

2d. In refusing to dismiss the levy, on the ground that plaintiff had closed without removing the *onus*.

3d. In charging the jury, that the judgment, although not signed until the 19th February, commenced and related back to the first day of the Term.

4th. In charging the jury, that if they believed from the evidence, that the defendant was in possession on the first day of the Term of the Court at which the judgment was had, although the judgment was not signed until the 19th February; that its lien commenced from the first day of the

Term, and the *onus* was cast upon the claimant of showing title in himself.

5th. Because the verdict was contrary to evidence.

6th. Because the verdict was contrary to law.

7th. Because the verdict is uncertain, in not fixing the amount on which the damages are to be assessed.

8th. Because the verdict does not specify with sufficient legal distinctness, what portion of the property in dispute is subject.

### *Brief of evidence.*

Plaintiff introduced the *fi. fa.*, and explained and accounted for the levy of personal property, and proved by Wheeler, that Mims had been in possession of the dry goods store house six or eight years, and up to the week before the February Term of the Superior Court; that on the first day of the Term, he went to the store house, as Sheriff, to levy on the goods in it, by virtue of a *fi. fa.* in his hands against Mims; Mims was in the back room, and Tomlinson came in; didn't see Mims exercise any acts of ownership, or authority at that time, over the goods or clerks. The week before Court, he had seen the clerks making an inventory of the goods. The back room where he saw Mims was a place of common resort. Tomlinson paid up the *fi. fa.* Witness went then to levy, and took control of it; next day the store was not opened, and was shut until witness broke it open on the 23d of February, 1852; did not know who had the key, and the control, after it was shut; Had seen Tomlinson open the door and go in; Mims left the country in two or three days after he went to levy the execution, and had not been back since to his knowledge; proved the value of the property, &c.

The Court refused the motion for new trial, and claimant excepts.

McCay & Hawkins; and Warren, for plaintiff in error.

Thomas C. Sullivan, for defendant in error.

*By the Court.*—McDonald J. delivering the opinion.

[1.] My brothers Lumpkin and Benning are of opinion that the presiding Judge in the Court below, erred in rejecting the sayings of Tomlinson, at the time the Sheriff went to levy the executions. They consider all the sayings of Tomlinson as admissible in evidence, as part of the *res gestæ.* I think that the evidence of what he said, ought to have been confined to his orders to the clerks.

The plaintiff in execution was endeavoring to prove possession of the property by the defendant as evidence of his title. The stock of goods was levied on at that time. Mims, the defendant, and Tomlinson, the claimant, were both in the store at the time, and to determine whose was the title, it was necessary to show whose conduct gave evidence of ownership, and the claimant's orders to the clerk ought to have been received for what they were worth, for that purpose. The declarations of Tomlinson, in favor of his own title, whether in or out of possession, whether at the time of the levy or at other time, according to no rule of law, according to my view of the law, could be received to *support* his title. Whatever he may have said in *disparagement* of, or *qualifying* his title, would be admissible.

If it be admitted that Mims was in possession at the time, what he said in disparagement of his title was admissible, otherwise, not. But this testimony had reference to the stock of goods only, which was not found subject to the execution. It, perhaps, may have an indirect influence on the title to the lot.

[2.] We think the Court decided correctly on the motion to dismiss the levy, on the ground that the *onus* was not

changed. On the week before the Court at which the judgment was obtained, the defendant was in possession of the property, and had been for six or eight years. The suit must have been pending, and the evidence was certainly sufficient to refer the question to the consideration of the jury, if the sale was made to hinder or-delay creditors.

[3.] This is a contest between a creditor and a person claiming to be the *bona fide* purchaser of the property levied on, from the debtor. And the question here is as to the *lien of the judgment* on the property, and the time at which the lien attached. There is a difference as to the lien of a judgment against a purchaser, and the lien of judgments against judgment creditors. If the purchaser be not chargeable with fraud of any sort, he takes a good title to the property, if purchased before the judgment. The statute creating the lien is, that the property of the defendant is bound from the signing of the first judgment. *Cobb*, 494.

By the Act of 1810, judgments obtained in the several Courts are to be paid according to their respective dates. *Cobb*, 496. By the Act of 1822, all judgments signed on verdicts rendered at the June Term of the Court, are to be held and considered of equal date, and no execution founded on judgments obtained at the same Term, shall be entitled to any preference by being placed first in the Sheriff's hands. The judgment cannot relate back so as to do a wrong, or lay a charge upon a person who is not a party. We think, therefore, that the Court erred in his charge to the jury, that the judgment related back to the first day of the Term. What we have said in respect to the charge of the presiding Judge, objected to in the third ground of the motion for a new trial, applies equally to that excepted to in the fourth ground in that motion.

.We think there is no valid objection to the verdict on the score of uncertainty.

As the cause goes back for reasons already assigned, we

Morgan vs. Sims & Nance.

will not remark specially on the other grounds, further than to say that we know of no rule of law that the verdict infringes, and we would not be disposed to interfere with the facts under the evidence before us, as the jury has passed upon them.

Judgment reversed.