## ISBELL et al. vs. EPPS et al.

EXECUTIONS FROM JUSTICES : *On what a lien, and when commences.*

An execution on a judgment rendered by a justice of the peace is a lien on all goods and chattels of the defendant in the execution, within the limits of the township to which the execution was direct ed, from the time of its delivery to the constable.

APPEAL from *White* Circuit Court.
Hon. S. F. CLARK, Special Judge.
*S. W. Williams*, for appellants.

BENNETT, J.   This action was instituted to recover the possession of a bale of cotton, said to have been wrongfully detained from the appellee by the appellants.   Appellants pleaded *non detinet*, and the cause was submitted to the court sitting as a jury.   Judgment was rendered in favor of appellee, and damages assessed at $187.60.   The motion for a new trial was overruled, and appeal granted.

The agreed statement of facts, as far as is necessary to decide the points before us, are as follows : Humphries, one of the appellants, was a constable in White county, and had an execution in his hands, issued by a justice of the peace, against one Montgomery.   On the 27th of July, 1866, Montgomery executed to appellees a mortgage on a crop of cotton, which mortgage was recorded on the 3d day of July.   The execution was in the hands of the constable before the mortgage was made.   Afterwards, the constable levied on a bale of cotton, a part of the cotton crop previously mortgaged to appellees, and sold, and bought by Isbell, one of the appellants, and claimed by appellee by virtue of their mortgage.   The sale under the execution took place on the 1st day of December, 1866.

The court declared the law to be, " that an execution from a judgment of a justice of the peace, in the hands of an officer of the proper county, is not a lien upon personal property until it is levied thereon."

In determining the rights of the parties to the suit, the only question was, which had priority of lien ; the execution in the hands of the officer, though not levied, or the mortgage, which was executed afterward.

At common law, the writ of *fi. fa.* bound the chattels of the defendant from *its teste.* 3 Bouv. Inst., 573, 574; Archb. Civ. Pl., tit., Execution; 1 Hay (N. C.), 396; 2 id., 57; 2 Hawkes, 232; 3 id., 296. As this had the unjust effect to overreach and defeat sales made even before the writ was delivered to the sheriff, it was remedied by the statute of the 29 Charles I, which made the writ binding from the time of its delivery to the sheriff to be executed.

Under our statute (Gould's Dig., secs. 35, 36, p. 505), which is nearly a copy of the English statute, an execution becomes a lien upon the personal property of defendant, and the real estate to which the judgment lien does not extend, from the time the writ is delivered to the officer in the proper county to be executed. And whenever the execution is placed in the officer's hands, the lien commences by presumption of law, the execution thereof is commenced, and it being an entirety, must be consummated. *Pettit et al. v. Johnson et al.*, 15 Ark., 55; *Davis v. Oswalt, Ex'r,* 18 id., 414; *James v. Marcus et al.,* id., 421.

It may be contended that the general law on the subject of execution, as cited in the above sections of Gould's Dig., giving or rather restricting the lien to the time of the delivery to the officer, is only applicable to executions issuing from the courts of record, and that statutes relative to proceedings of courts of record are not to be construed so as to extend to courts of limited or inferior jurisdiction.

A writ of execution is a final process in a suit at law; its purpose being to obtain the fruits of the remedy, and to put an end to the proceeding. In general, an execution in a civil case before a justice of the peace is to be issued; its form and requisitions are to be drawn; it is to be directed to the prescribed officer; served and carried into effect, and a return made thereof, strictly in conformity with the provisions of the

acts of the general assembly. An execution cannot be issued by a justice of the peace unless it be expressly or impliedly authorized by statute. It is to be considered, however, that there are certain general principles and rules of law relative to writs of execution issued by the courts of record, and the proceedings thereon, which are applicable to similar process, under the jurisdiction of a justice of the peace. In the examination of the acts creating justices' courts and defining jurisdiction, there will be found an analogy running between them. There is an analogy which governs in respect to the nature of personal property, as distinguished from real estate; property in possession as distinguished from choses in action, bailments, exemptions, the mode of making a levy, the control of the officer over goods and chattels levied on; the title of the purchaser to property sold on execution; the arrest and commitment of a party, and other incidental matters and particulars.

Chief Justice SAVAGE in the case of *Pixley v. Butts*, 2 Cow., 421, says: "The same rules of law which govern sheriffs in the execution of process from the higher courts, govern constables in the execution of a justice's process, in analogy to the former, except where some statute intervenes."

Under our statute a party in whose favor any judgment, order or decree is or shall be rendered, made by a court of record, may have an execution in conformity with such judgment, order or decree. Such execution shall be a *fieri facias* against the goods, chattels and real estate of the party against whom the judgment, order or decree shall have been rendered. Gould's Dig., secs. 1, 2, p. 499, 500. The form is provided and set out in full in section 6, p. 500. This is the execution provided for in a court of record.

Section 141, ch. 99, Gould's Dig., says: "Upon any judgment rendered by a justice of the peace, execution shall be is-

sued by such justice in manner hereinafter prescribed at any time on demand." Secs. 146, 147, say: "The execution shall be directed to the constable of the township where the justice resides. * * * Such execution shall be against the goods and chattels of the persons against whom the same is issued." Sec. 149 prescribes the form. The form of an execution, as provided by statute, is in substance, the same in justices' courts as in courts of record, except the execution from a justice only reaches the goods and chattels, while executions from courts of record reach "goods, chattels and real estate." An execution from a court of record is directed to the sheriff of the county; an execution from a justice's court is directed to the constable of the township where the justice resides. It may also be remarked that some of the provisions of the execution law have always been held applicable to executions from justices' courts. There is nothing in the law relative to those courts, which exempts any property of the defendant from execution, yet it has never been questioned that property exempt by the general law relative to executions is also exempt from levy and sale under executions issuing from justices' courts.

By these comparisons we are led to believe that executions issued from a justice's court are executions with the same power as though issued from a court of reorrd, limited only by the statute as to the extent of territory and the kinds of property over which their lien may extend. As to the territory over which the lien may extend, justices of the peace and constables are township officers. While it may be true that justices of the peace have jurisdiction co-extensive with the county, yet, they are not authorized to act judicially in the hearing and determining of causes beyond their respective townships. *Humphries v. McGraw*, 5 Ark., 64. A constable is purely a township officer, yet, in certain cases, may execute

civil process throughout the county. But these cases are exceptional in their nature, and while acting officially out of the township in which they were elected, are virtually, under our statutes, but constables of the township in which for the time being they are acting. The general tenor of our statutes creating the office of justices of the peace and constables, and defining their jurisdiction, clearly demonstrates the fact that they are but township officers, and any lien created by judgments rendered or executions issued by justices of the peace, cannot be held to extend beyond the limits of the township in which they were rendered or issued. This view is aided by the fact that sec. 152, ch. 99 of Gould's Dig., requires the justice, when the defendant resides out of the township where the judgment was rendered, or that he has not sufficient goods and chattels therein to satisfy such judgment, the justice shall issue the execution to the constable of the township, where the defendant or his goods and chattels may be.

In the examination of questions as presented by the declarations of law made by the court below, we have been unable to find but two authorities in point; one in New York (*Wylie v. Hyde*, 13 J. R.), the other in Missouri (*Brown v. Burns*, 8 Mo.). In the New York case, Judge YATES says: "The time of making the levy only can control the right to the property, and that alone can create the lien; it then, and not before, is properly in custody of the law." Justice SCOTT, in the Missouri case says, in commenting on the *Wylie v. Hyde* case: "The court did not deny the existence of the lien prior to the levy, on general principles, but inferred its nonexistence from its incompatibility with other statutory provisions." We have been unable to find what the statute of New York says directly as to the commencement of the lien. Justice SCOTT further says: "The extent of the jurisdiction of justice's courts would disincline us to the opinion that the legislature intended

taking away the lien of the execution. Why should the suitors of some courts have so great an advantage over others ? The practical construction of the law has been, that the lien existed from the delivery of the writ to the constable."

The statute of Missouri on executions is similar to our own, and while the time is not fixed by statute for the beginning of the execution lien in the hands of a constable, the decision in the above case has declared the law of Missouri to be, that an execution lien issued on a judgment rendered in a justice's court begins when the execution is placed in the hands of the constable, and extends to the goods and chattels of the defendant in the execution within the limits of the township to which it was directed. We have very few, if any, decisions as to what the common law in this country is, because the subject is, in most of the states, regulated by express statute. Thus, in New York, the statute of the 29 Charles is reenacted expressly. *Ray v. Burdridge,* 15 Denio, 624; 12 Johns., 403. So in Indiana, 7 Blackf., 501; 4 id., 496; 4 Ind., 255. So in Illinois, 13 Ill., 20; 22 id., 93. So in Kentucky, 1 Litt. St., 540 ; 4 Bibb., 31 ; 2 J. J. Marsh., 421. So in Florida, 4 Fla., 126; and Maryland, 3 Md., 99; and Alabama, 12 Ala., 71; id 247 ; 18 id., 387. In Missouri, as between two officers, the first levy holds, though the writ was delivered last. 9 Mo., 492. In California, Ohio and Iowa, by statutes, the lien is from levy only. In North Carolina, where the common law as a body is adopted, the lien is from the teste. 8 Ired., 63, and cases *supra.* And Tennessee follows North Carolina. 9 Humph., 91; 1 Swan, 304. In New Hampshire, he whose execution was in the hands of the officer first, was entitled to the proceeds. 6 N. H., 70. In New Jersey, the priority according to circumstances is regulated by statute. In Connecticut, no title to lands is acquired until levy and record of levy made in clerk's office. 5 Day,

160; 8 Conn., 538. In Georgia, the statute creating the lien is that the property of the defendant is bound from the signing of the first judgment. 26 Ga., 287. In Wisconsin, a sheriff, having two executions in his hands against the same party, is bound to levy and satisfy them according to seniority in his hands. 18 Wis., 406.

All of the above decisions relate to executions in the hands of the sheriff, and issued from a court of record, and only by analogy would be applicable to constables with executions in their hands from justices of the peace courts. We are then left to conclude that a justice of the peace execution in the hands of a constable is a lien from its teste as at common law or only from delivery to the officer. We do not feel bound to adopt the unreasonable and unjust rule of the ancient common law — so unjust, indeed, that it had to be remedied by statute, and in fact we think it would be more in accord with the policy of our laws, and would harmonize with decisions on kindred subjects, were we to hold that the lien did not begin until actual levy. The whole current of judicial decisions has been most wisely against secret constructive liens, especially when these are set up against purchasers. Yet we are unable so to declare the law as it was in Gould's Digest, and under which the decision is rendered, as this cause of action accrued before the adoption of the code; but we are of opinion that the execution was a lien on all goods and chattels of the defendant in the execution, within the limits of the township to which the execution was directed from the time of its delivery to the constable.

Judgment reversed, and the cause remanded for a new trial.