### LUCK v. STAPLES (two cases).

### In re LUCK CONST. CO., Inc.

#### (Circuit Court of Appeals, Fourth Circuit. October 1, 1918.)

#### Nos. 1634, 1649.

1. BANKRUPTCY ⬗⬗440—APPELLATE PROCEEDINGS—MODE OF REVIEW.

An order of a bankruptcy court denying validity of a lien, where the matter was determined on questions of fact, is reviewable by appeal, and not on petition to revise.

2. BANKRUPTCY ⬗⬗467—FINDINGS OF FACT—REVIEW ON APPEAL.

Order of a bankruptcy court, made on report of referee finding that a mortgage on the property of bankrupt corporation, executed when it was insolvent by its president, to secure a past indebtedness to himself as executor, was executed without authority and void, and subject to attack by the trustee, would be affirmed.

⬗⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On Petition to Superintend and Revise in Matter of Law Proceedings of and Appeal from the District Court of the United States for the Western District of Virginia, at Roanoke, in Bankruptcy; Henry Clay McDowell, Judge.

In the matter of the Luck Construction Company, bankrupt; Abram P. Staples, Trustee. Petition to revise and appeal by H. M. Luck, executor, to review order of District Court. Petition to revise dismissed, and order affirmed on appeal.

W. L. Welborn, of Roanoke, Va., for petitioner and appellant.

Horace M. Fox and Abram P. Staples, both of Roanoke, Va., for respondent and appellee.

Before PRITCHARD and KNAPP, Circuit Judges, and CONNOR, District Judge.

PRITCHARD, Circuit Judge. As will be observed by the caption, these causes come here (No. 1634) on petition to superintend and revise in matter of law and (No. 1649) on appeal from the District Court, sitting as a court of bankruptcy, for the Western District of Virginia.

[1, 2] On the petition to superintend and revise in matter of law, we will consider first the point as to whether a petition to superintend and revise in matter of law is the proper mode of having the cause reviewed. The main question involved is as to the validity of a lien of a deed of trust and chattel mortgage dated August 29 and September 1, 1916, upon practically all of the assets of the bankrupt alleged to have been given to secure H. M. Luck, executor of N. C. Luck, deceased, the payment of $3,000. It appears that the controversy herein involved is as to the validity of said lien, and is a controversy arising in bankruptcy between the trustee on one side, representing the other creditors, and the said executor on the other.

The order of the District Court, in disallowing this debt and disallowing this claim as a secured claim, is challenged in the petition to superintend and revise in matter of law, wherein it is alleged that the court below erred in certain findings of fact, as set out in said petition under paragraphs 3, 4, 5, 6, 7, 8, 9, 11, and 14; therefore it will be observed that the real issue involved in this controversy is as to questions involved in issues of fact. We think that the law as to this point it so well settled that it is unnecessary to enter into an extended discussion of the same, further than to cite the following cases: Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; Security Warehousing Co. v. Hand, 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789; Home Bank for Savings v. Lohm, 223 Fed. 633, 139 C. C. A. 179 (4th Cir.); Holden v. Stratton, 191 U. S. 115, 24 Sup. Ct. 45, 48 L. Ed. 116; Matter of Loving, 224 U. S. 183, 32 Sup. Ct. 446, 56 L. Ed. 725; American Piano Co. v. Heazel, 38 Am. Bankr. Rep. 677, 240 Fed. 410, 153 C. C. A. 336 (4th Cir.).

For the reasons stated, the petition to superintend and revise is dismissed.

The referee found the facts as follows:

"The Luck Construction Company, Incorporated, the bankrupt, was a Virginia corporation. Its officers were H. M. Luck, president; G. T. Fogel, secretary and treasurer; E. E. Francey, vice president. These three parties owned all the stock of the corporation and were its directors. While E. E. Francey had advanced to G. T. Fogel the money with which to purchase his stock, yet the Fogel stock, amounting to $10,000 par value, had been issued to him, (Fogel) and stood on the books of the company in his name.

"In the spring and summer of 1916 the Luck Construction Company was engaged in doing certain railroad construction in Nelson county, Va., for the Blue Ridge Railway Company, and so far as the record shows this was all the business it had at this time. Some years prior to 1916, N. C. Luck, father of H. M. Luck, had died, leaving a will whereunder H. M. Luck was appointed executor, and H. M. Luck afterwards qualified as such. Under said will the beneficiaries were the said H. M. Luck and his four sisters, Mrs. Welborn, Mrs. Marshall, Mrs. Runge, and Mrs. Wilson. That certain funds of the N. C. Luck estate came into the hands of H. M. Luck as executor, either prior to or about June, 1916. That by a paper purporting to be dated June 6, 1916, the Luck Construction Company, by H. M. Luck, as president, and R. S. Sale, purporting to be assistant secretary, undertook to give a chattel mortgage on certain steel rail belonging to the Luck Construction Company at Westport, Md., to secure H. M. Luck, executor, $2,000. This instrument was not in fact executed by Luck and Sale until after June 21, 1916. That Sale was never elected by the stockholders or directors' assistant secretary, but undertook to act as such under a power of attorney from G. T. Fogel, given on March 10, 1911. That Luck, as president, and Sale, purporting to be assistant secretary, had no authority from either the board of directors, nor from Francey or Fogel, individually or as stockholders to give this chattel mortgage and in fact Fogel was never informed of it and Francey probably never heard of it, certainly not till long after it had been given. This paper was never taken out of the office of the company or recorded. That on June 21, 1916, H. M. Luck, executor, advanced the Luck Construction Company $1,000; on June 22, 1916, $1,000; and on July 3, 1916, $1,000. That on August 30, 1916, he advanced $250; August 30th, $629.07; September 8, $100; September 16, $300; September 20, $200. The first $3,000 so advanced, on June 21, June 22, and July 3, are the $3,000 claimed as secured by the deed of trust and chattel mortgage of August 29, 1916, here, particularly in controversy. That the accounts of the Luck Construction Company were being kept in the Colonial Bank & Trust Company of Roanoke, Va., in the name of H. M. Luck personally, during this time. That the rail at Westport was sold by the Luck Construction Company in July, 1916, for $2,000, and the money was paid to the company and entered on the books as 'July's Rail Westport $776.25;' 'August 20th—By check rail from Westport $1,370.33.' These payments were to the company, and the money thereby received was the property of the company. No formal release was made of the attempted chattel mortgage which Luck and Sale had undertaken to give on this rail, but the rail was sold clear of liens to the purchasers. At the time these rails were sold by Luck Construction Company there was no understanding of any kind between that company and H. M. Luck, executor, that he should receive other security for $2,000.

"The entire $3,000 advanced by Luck, executor, to the Luck Construction Company, was expended and paid out by the Luck Construction Company on the Virginia Blue Ridge job in June, July, and August, 1916. That on August 29, 1916, and for some months prior thereto, the Luck Construction Company was hopelessly insolvent, owing debts of about $50,000 or over, with assets as nearly as can be judged of less than $10,000. That in July the Luck Construction Company had assigned all its equities and profits in the Virginia Blue Ridge Railway Company job to a trustee to secure certain Lynchburg creditors, and the amount of $1,279 then afterwards received paid only a small portion of these Lynchburg debts. That on August 29, 1916, the said company had no other assets, except certain equipment, which as sold in this proceeding brought only $5,000, which was a very fair price.

"That on or about August 29, 1916, H. M. Luck undertook as president of the Luck Construction Company to give a deed of trust and chattel mortgage

on practically all the assets of the company to secure himself as executor the said $3,000 already advanced to the Luck Construction Company by himself and already paid out on the Virginia Blue Ridge job. That no meeting of the stockholders or directors of said company was called, or ever undertaken to be held. That no notice or knowledge to G. T. Fogel, the owner of $10,000 of the stock of the company, also a director, was given. That E. E. Francey, the remaining stockholder and director, was about this time written to by Sale, or Luck, asking his consent to give a mortgage to secure some money to be borrowed from the Luck estate, which was to be used in carrying on a new job just taken by the company in Alleghany county, Md., 'and that in order to start that work up then I agreed they should execute the deed of trust.' That Francey knew nothing about the Luck estate having advanced money in the summer of 1916, and that this money had already been expended in the Virginia Blue Ridge job. That he never authorized the giving of a mortgage or deed of trust to secure such money, and Francey testified that, if he had known the facts he would not have consented. That at this very time Francey himself was a creditor for money advanced and loaned to the Luck Construction Company, in the sum of about $20,000. That $2,000 which was turned over by check of H. M. Luck on or about the date of the alleged deed of trust and mortgage was really the money of the company itself, representing the proceeds of the company's rail at Westport, and was not the money of H. M. Luck, executor.

"That H. M. Luck had actual knowledge of all the above facts.

"No ratification of these attempted liens is shown by the evidence to have been made by Francey or Fogel. The moneys advanced by H. M. Luck, executor, to the Luck Construction Company, on August 30, 1916, and subsequent dates (set out in detail, supra), and totaling $1,479.67, are not claimed, either as set out in the original and amended proofs of debt, and exhibits filed therewith, or in the evidence and statement of counsel for H. M. Luck, executor, to be included in the alleged security of the deed of trust and chattel mortgage, here in controversy. The deed of trust and mortgage are only claimed as security for the payment made to and expended by the Luck Construction Company in June and July, 1916, 'which money was loaned some months before the security was given.'"

In determining as to the correctness of the rulings of the court below, it should be borne in mind that all questions of fact were found by the referee and in turn affirmed by the court below.

The referee in making his report filed an opinion which we think clearly and accurately states the law. We quote the opinion in full:

"Ordinarily a corporation cannot legally act in matters of this kind, except through its board of directors in meeting assembled—in a board meeting where the matter may be acted upon as a board sitting as such. This is the general rule. That the board of directors of the bankrupt corporation held no meeting authorizing the execution of the deed of trust in question is clearly established by the evidence. 10 Cyc. pp. 774, 775; 3 Cook on Corporations (6th Ed.) § 1713a; 2 Thompson on Corporations (2d Ed.) §§ 1071–1073.

"While this is the general rule, it will be observed that the great majority of cases cited by the authorities in support of this rule were cases arising out of suits instituted by stockholders, and not creditors. On the other hand, there is good authority for the proposition that where innocent parties, for a present fair consideration, deal with officers of a corporation who have been held out as having authority to do certain acts, who have apparent or ostensible authority to act for the corporation in certain matters, the innocent party, having acted in good faith and having changed his position by virtue thereof, will be protected, even though it turns out that the officer with whom he was dealing in reality had no authority to bind the corporation, or that the transaction has been otherwise irregular. In seeking this protection, however, the party must bring himself clearly within the rule, and show that he did not have actual knowledge of the true condition and acted in the utmost good faith. 10 Cyc. p. 912; Thompson on Corporations, § 2560.

"But here we have no such condition. This is neither a suit by a stockholder, nor did the petitioner herein part with his property for a present fair consideration, nor can he claim that he was innocent of the true state of affairs. On the contrary, the beneficiary under the deed of trust in question had full and actual knowledge of the company's condition, knew that no corporate action had been taken, knew that he was not applying the proceeds derived from the deed of trust in the manner agreed upon by Francey, the largest stockholder, vice president of the company, and one of its three directors. He had actual knowledge that Fogel, who was the owner of $10,000 of the stock of the corporation, and also a director, did not even know of the proposed deed of trust. Luck, executor, was dealing with himself as president of the Luck Construction Company, and merely directed Sale, at most a de facto officer, to sign the deed as secretary and place thereon the seal of the corporation. In reality Luck was the only officer and stockholder of the corporation who knew what was taking place. The evidence shows that Sale was not a stockholder, and held the office of assistant secretary of the corporation by virtue of a power of attorney in which Fogel, the real secretary of the company, undertook to delegate the duties of his office to Sale. Luck, executor, therefore, cannot be heard to say that he did not have actual knowledge of all these facts. What he did was not the act of the corporation, and the attempted conveyance of the property described in the deed of trust and chattel mortgage of August 29, 1916, must be held to be absolutely void.

"Here we find Luck as president of the corporation dealing with himself as executor of the N. C. Luck estate. The evidence shows that Luck is one of the legatees under the will of N. C. Luck, and therefore interested in the transaction in three different capacities: First, as president; second, as executor; and, third, individually. The decisions and authorities holding that transactions of this kind are invalid are too clear to admit of argument. 10 Cyc. p. 918; Thompson on Corporations, § 1411.

"It is contended by the petitioner that the trustee in bankruptcy cannot properly attack the validity of the deed of trust under consideration. It is argued that the trustee stands in the shoes of the bankrupt corporation, and that if the corporation could not raise any question concerning the validity of the deed of trust (under the doctrines of estoppel) then the trustee could not. While this may have been true prior to the amendment of the Bankruptcy Act, it is not now a correct statement of the law. Section 47 of the Bankruptcy Act of July 1, 1898 (30 Stat. 577, c. 541) as amended by Act June 25, 1910, 36 Stat. 840 (Comp. St. § 9631), provides in part as follows: ' * * * (2) And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon, and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied.' "

In view of the foregoing, which meets with our hearty approval, we do not deem it necessary to enter into an extended discussion of the matters involved in this controversy, inasmuch as what we might say would of a necessity be simply a repetition of what the referee has already so well said, further than to cite the case of Loan & Trust Co. v. Graham, 14 Am. Bankr. Rep. 313, 135 Fed. 717, 68 C. C. A. 355. This court, in discussing this phase of the question, said:

"The question of whether or not the lien claimed by the trust company constituted a valid preference under the bankruptcy law was one dependent upon the correct determination of the facts in relation to the particular transaction; and that fact both the referee and the lower court having determined adversely to the trust company, this court, treating this as a petition for review, could not disturb, and, treating it as an appeal, should only do so where those tribunals appear plainly to have been wrong in the conclusions reached by them. Under the facts of this case it may be said that there was

room for difference of opinion as to just what was the true transaction between the parties; but certainly no such doubt as would justify this court in departing from the well-established rule of accepting the decision of the lower courts, particularly where they both coincide as to what are the facts."

In view of what we have said, it necessarily follows that the decree of the lower court should be affirmed.

Affirmed.