### McBRIDE et al. v. MULLINIX.

(Circuit Court of Appeals, Eighth Circuit. April 28, 1924.)

No. 249.

1. **Subrogation ⬳7(1)—Surety on stay bond, who pays judgment, subrogated to lien of creditor.**

   A surety on a stay bond for stay of a judgment, who pays the judgment, is subrogated to any lien which the judgment creditor had.

2. **Judgment ⬳772—Under Arkansas statute stay of judgment of justice makes the judgment a lien.**

   Under Crawford & Moses' Dig. Ark. § 6472, providing that "where execution shall be stayed on any judgment rendered by a justice of the peace, such judgment shall be a lien upon all the personal property subject to execution belonging to the defendant at the time of the rendition of the judgment," on the giving of a stay bond, whether or not execution had issued on the judgment, it becomes a lien, but only for the term of six months, to which the time of stay is limited.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Bankruptcy ⊚345—Judgment liens, which had expired before bankruptcy, do not entitle holders to preference.**

Judgment liens against property of a bankrupt, which had expired by limitation under the statute prior to the bankruptcy, do not entitle the holders to preference.

4. **Bankruptcy ⊚345—Holders of judgment liens entitled to preference only as to property subject to the lien which came into possession of the trustee.**

Claims of holders of judgment liens on personal property owned by bankrupt at the time of rendition of the judgments are not entitled to preference, without proof that the property to which the liens attached came into possession of the trustee.

5. **Bankruptcy ⊚440—Disposition of claim to preference reviewable by appeal.**

Where a claim to a lien is brought forward only as incidental to the nature of the debt proved, the ruling thereon is reviewable by appeal.

6. **Bankruptcy ⊚440—Order involving both facts and law not reviewable on petition to revise.**

Where the validity of an order depends on consideration of both law and facts, it is not reviewable on petition to revise.

Petition to Revise Order of the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

In the matter of W. H. McBride, bankrupt; F. C. Mullinix, trustee. On petition by J. T. McBride and others to revise order of District Court. Dismissed.

M. P. Huddleston, of Paragould, Ark., and H. M. Cooley and Arthur L. Adams, both of Jonesboro, Ark., for petitioners.

Horace Sloan, of Jonesboro, Ark., for respondent.

Before LEWIS, Circuit Judge, and BOOTH and SYMES, District Judges.

LEWIS, Circuit Judge. Before W. H. McBride was adjudged bankrupt on February 2, 1922, seventeen creditors obtained judgments against him, all in Justice of the Peace court. Five of those judgments were affirmed October 28, 1921, by the State Circuit Court on appeal, and C. G. Earle, who had signed as surety the appeal bond, had to pay them. He then presented his claim for the amount he had paid and asked that it be allowed and given a preference in payment out of the assets of the bankrupt estate. It was allowed as a general claim and preference denied.

As to six of the other judgments J. T. McBride gave a stay bond under the Arkansas statute, on two of which executions had issued when the stay bonds were given.

As to four other of the judgments J S. Simpson gave stay bonds. Execution had not issued on any of them when the bonds were given.

On the remaining two judgments W. J. McBride gave stay bonds. At the time they were given execution had issued on one judgment but not on the other. The three parties named who had given the stay bonds had to pay the judgments, and each of them presented his claim for the amount he had paid and asked that it be allowed and given a preference. They were all allowed as general claims and preferences denied.

⊚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] They and Earle then filed their petition here, claiming that the judgments were liens, that petitioners by subrogation could avail themselves of those liens, and that the court had erred in matter of law in denying to each of them a preference and asked that the order be revised in that respect. Bankruptcy Act, § 24b (Comp. St. § 9608). The relation of each of the petitioners to the bankrupt and to the respective transactions with which they dealt, was such that there can be no doubt of their rights to be subrogated to and to have the benefit of any and all liens which the judgment creditors had. Those liens, while they continued to be such, would be regarded as subsisting for the benefit of petitioners.. It is not claimed that any of these judgments when rendered by the Justice of the Peace, without more, became a lien on the property of the judgment debtor, either real or personal; but it is contended that under the State statute all of the judgments in which stay bonds were given became liens from and after the dates of the judgments and continued as such until paid by the makers of the stay bonds, and that on payment they were entitled to be subrogated to the rights of the judgment creditors. Under the statute an execution issued on the Justice's judgment becomes a lien on the personal property of the judgment debtor within the township when it is placed in the hands of the officer for levy. It is returnable within thirty days, but if no levy is made it may be renewed by the Justice and the lien thus kept alive for twelve months. Isbell v. Epps, 28 Ark. 35; Carroll v. Gillespie, 41 Ark. 468; McCabe v. Lee, 123 Ark. 82, 184 S. W. 448.

[2] The statute provides that execution from a judgment rendered by a justice of the peace may be stayed in the manner designated, that is, that some responsible person "must enter into an obligation before the justice to the adverse party, in a sum sufficient to secure the payment of the judgment, conditioned to be void on payment of such judgment at the expiration of the stay, provided, the stay in all sums under said jurisdiction shall be six months from the rendition of the judgment." It gives the form of the bond and declares that it shall have the same force and effect as a judgment rendered by a justice of the peace. Section 6472 (Crawford & Moses' Digest) reads thus:

"In all cases where execution shall be stayed on any judgment rendered by a justice of the peace, such judgment shall be a lien upon all the personal property subject to execution belonging to the defendant at the time of the rendition of the judgment."

Section 6476 reads:

"If a judgment be stayed in the manner hereinbefore prescribed after an execution shall have been issued thereon. the justice shall revoke said execution in the same manner and with like effect as he is hereinafter directed to revoke an execution after an appeal has been allowed."

[3] The statute speaks of staying executions and staying judgments and counsel for the trustee argues that a judgment is made a lien only when the stay bond is given after execution has issued. But the purpose of a stay bond is to avoid seizure and sale of the debtor's property. At the same time it gives the judgment creditor security by mak-

ing the judgment a lien. The benefits intended are reciprocal. Time for payment by the debtor is extended and the creditor is given a lien under his judgment in addition to the liability of the maker of the stay bond to him. The judgment lien is also mutually beneficial. While it affords security to the creditor it also enables the debtor to more readily give the bond. The statute thus attempted to give equal regard to the rights of both parties. The trustee's contention is too literal and neglects and would thwart the practical purposes of the statute. We think the statute creates the lien as to all judgments in which stay bonds are given, whether execution had or had not issued prior to giving the bond. If an execution had issued the stay bond operated to recall it, and as to judgments on which execution had not issued the stay bond would prevent their issuance during the time limited. But inasmuch as the lien is given by virtue of the stay bond, and the stay cannot be for more than six months from the rendition of the judgment, the lien, it seems, would expire six months from the date of the judgment. Eight of the judgments in which stay bonds were given were rendered more than six months prior to the filing of the petition in bankruptcy (February 2, 1922), and hence there were no liens on that date as to those eight judgments. Those liens had expired, and as to them the property of the bankrupt passed to the trustee free from lien. We have not been referred to a construction of the statute by the State Supreme Court contrary to the views we have expressed, and the ability and industry of counsel cause us to assume there is none.

[4] As applicable to all judgments in which stay bonds were given —the lien which the statute gives is imposed only on "personal property subject to execution belonging to the defendant at the time of the rendition of the judgment." Section 6472. Those judgments were all rendered between June 14 and September 14, 1921. The record does not disclose what personal property the bankrupt owned subject to execution at the time these judgments were respectively rendered, where it was situated at that time, its value and that it or some definite part of it was taken over by the trustee. All that is said on the subject is found in the memorandum of the district judge:

"In the instant case the personal property of the bankrupt who was the judgment debtor, was in the township in which the judgment was rendered, in the City of Paragould, Ark."

How much and when? and did the trustee get it? There is no stipulation as to the facts in that respect, nor is it shown that any testimony was offered on that subject, nor what it was. Clearly, the liens which the makers of the stay bonds seek to avail themselves of could not be ascertained and adjudicated until those facts were established; and as to each judgment its lien would be brought within the restrictions of the statute. Conceding the liens and the right to be subrogated thereto, preferential payments could not be allowed out of the proceeds of personal property belonging to the bankrupt estate unless that property was owned by the bankrupt and subject to execution at the time the judgments were rendered. We are not able to say, in the absence of the necessary proof in that respect, that the court erred in denying preferential payments to their claims.

This leaves for consideration the claim of C. G. Earle. It appears that five creditors of the bankrupt obtained judgments against him in justice of the peace court, all between November 23, 1920, and February 9, 1921, and stay bonds were given in that court on all of them without executions having been issued. The docket of the justice of the peace was lost or destroyed, and thereupon the judgment creditors brought suits to restore those records. Such judgments were obtained and appeals taken therefrom to the Circuit Court. It was these appeals in which C. G. Earle became surety for the bankrupt. By judgment of the Circuit Court entered October 28, 1921, all of these five judgments were affirmed and Earle as surety paid them. It is not certain whether Earle relies upon claimed liens given to the judgments of the justice of the peace because of the giving of the stay bonds, or whether he looks to a claimed lien because of the judgment in the Circuit Court, or both. What we have already said disposes of the first ground. The liens of the judgments in the justice of the peace court had long expired prior to bankruptcy, and that in the Circuit Court, if there was one, was obtained within four months prior to bankruptcy and was avoided by the Act. The judgment creditors obtained in that court no valid lien to which he could be subrogated.

[5, 6] The procedure here is in doubt. We are disposed to think the questions submitted should have been presented on appeals. The right to the liens claimed was not brought forward below as separate and independent questions, but as incidental to the debts of the bankrupt; and where that is the case the procedure as to the debt or claim governs. Bankruptcy Act, § 25 (Comp. St. § 9609); Coder v. Arts, 213 U. S. 223, 235, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; s. c. 152 Fed. 943, 82 C. C. A. 91, 15 L. R. A. (N. S.) 372; In re Hartzell, 209 Fed. 775, 126 C. C. A. 499; Moody v. Century Bank, 239 U. S. 374, 377, 36 Sup. Ct. 111, 60 L. Ed. 336; Globe Bank v. Martin, 236 U. S. 288, 295, 35 Sup. Ct. 377, 59 L. Ed. 583; New Hampshire Savings Bank v. Varner, 216 Fed. 721, 132 C. C. A. 631; Luck v. Staples, 255 Fed. 637, 167 C. C. A. 13; In re Smith Bros. Co., 238 Fed. 269, 151 C. C. A. 285. Contra, Hutting Sash & Door Co. v. Stitt, 218 Fed. 1, 133 C. C. A. 641. What we have said about the facts necessary to be established as to the ownership of property by the bankrupt at the time the judgments were rendered makes it apparent that as to those matters a review of the facts and conclusions thereon could not be avoided, and this can be had only on appeal. In re Lee, 182 Fed. 579, 105 C. C. A. 117. Petition dismissed.