Phillips *vs.* Dobbins.

WILLIAM R. PHILLIPS, plaintiff in error, *vs.* MILES G. DOBBINS, defendant in error.

1. Section 3583 of the Code, which reads as follows: " When any person has *bona fide*, and for a valuable consideration, purchased real or personal property, and has been in the possession of such real property for four years, or of such personal property two years, the same shall be discharged from the lien of any judgment against the person from whom he pur-chased," construed to mean that no person in the sense of this section is a *bona fide* purchaser who has actual knowledge of the judgment, and that four years' possession will not protect a purchaser with actual notice of the judgment.

2. An attorney at law to sue for and collect a claim, cannot bind his client without his consent, by a release of any of defendant's property from the lien of the judgment he obtains.

JACKSON, Judge, dissenting:

1. The words " *bona fide* " mean in Latin, in their common anglicised sig-nification, and in their legal technical sense, good faith, which words sim-ply antagonize bad faith, and import honesty, fairness and the absence of all fraud and collusion.    Therefore a purchaser may buy *bona fide* though he knows that a judgment exists against his vendor ; and despite such knowl-edge, he does actually and truly buy *bona fide*, if, at the time he purchased the land, he was informed by the attorney of the plaintiff in *fi. fa.*, that he, the attorney, had " exclusive control" of the *fi. fa. ;* that there was an abundance of other property bound by it ; that he would put all that property between the *fi. fa.* and the land purchased, if he bought, and that he would relinquish at once the lien of the judgment upon this land but for the fact that the law would thereby discharge all the other property also from its lien ; and if the facts show that the purchaser paid full value for the land, and would not have paid it and consummated the trade but for the assurance of the attorney, and especially if the judgment was in the hands of the attorney as collateral security and he thus represented several parties, and was thus, of all men, the proper person to whom the purchaser should go for the truth, and more especially if it appears that the other property bound by the lien depreciated in value after the letter of the attorney and the consequent purchase on the faith of it, and that the attor-ney was delayed in pressing the judgment upon the other property by the.

fact that the plaintiff in *fi. fa.* had a law-suit in which the defendant in *fi. fa.* and vendor of the purchaser was a witness, and the attorney was from time to time directed by the plaintiff not to press the judgment, because he wished his witness to be friendly to him till the termination of that suit.

2. The question is not whether the attorney can relinquish the property of the debtor from a lien of the judgment of his client, but the question is whether the purchaser for value, before he pays all the purchase money to the defendant in *fi. fa.*, can show his good faith in the purchase by proving that he went to the best possible source of information, and got the information in good faith, and acted upon it in good faith.

3. Actual knowledge of the judgment may be a circumstance tending to show bad faith, and if accompanied by proof that the purchaser had got the land for a less price, or colluded in any way with the defendant in *fi. fa.* to the hurt of the plaintiff, it would show bad faith in the purchaser, and defeat the bar of the four years' possession; but when such knowledge is accompanied only by facts which show the utmost honesty and good faith, and not a suspicion of fraud or collusion is shown in the purchaser, justice and common sense, as well as law, demand that four years' possession without disturbance shall protect him in his purchase and discharge the lien of the judgment, especially when other property bound by the judgment depreciated in value by delays caused by the plaintiff's direction not to levy.

4. A levy within the four years, immediately dismissed without any legal impediment, is not such a disturbance as to mar the peacefulness of the purchaser's possession, especially when no legal notice was given the claimant.

5. Opinion of the majority of the court in *Sanders vs. McAffee*, 42 *Georgia Reports*, 250, approved.

Judgments.    Liens.    Statute of limitations.    Attorney. Before Judge PEEPLES.    Fulton Superior Court.    April Term, 1876.

On December 21st, 1866, execution issued from Fulton superior court against one J. J. Morrison, as trustee for his wife, under a judgment in favor of John T. Wilson.    On the 4th of July, 1874, it was levied on a certain piece of land, by direction of D. F. Hammond, attorney at law of William R. Phillips, the assignee of Wilson.    Dobbins interposed claim, and issue was joined.    Claimant pleaded, specially, that he purchased the place from Morrison, trustee; and that he was led to pay the entire purchase money to said Morrison by the written representations of D. F. Hammond, the attorney at law of Phillips.

On the trial, the *fi. fa.* against Morrison was introduced in evidence, with a number of indorsements thereon. Some of these were entries of credits by the attorney of the plaintiff. There was also an assignment by Wilson to Phillips; and an entry by the sheriff of a levy made, under the direction of plaintiff's attorney, upon the land now in controversy, on October 7th, 1872. Following this was a dismissal of this levy, by order of plaintiff's attorney, on 25th January, 1873.

M. G. Dobbins testified that he purchased the property from Morrison on August 24th, 1869, took a deed thereto, went into possession, and has been so ever since; knew of the judgment and execution against Morrison before purchasing. G. W. Adair acted as agent for the sale of the place; refused to close the trade with him until the title was made clear. Said Adair brought witness a letter from D. F. Hammond, plaintiff's attorney, which represented that he could purchase without fear of levy from *fi. fas.* in his hands. Witness thereupon purchased and paid for the place, in perfect good faith. In October, 1872, saw this property advertised for sale under the Phillips' *fi. fa.* Went at once to Hammond, who said that he had forgotten about the letter to witness, and promised to dismiss the levy. Never received any written notice of such levy. Acting on the faith of Hammond's letter, paid $10,000 for the aforesaid place. Heard no more of the *fi. fa.* until the present levy.

G. W. Adair testified as follows: Is a real estate agent. Sold this property to claimant in August, 1869. Claimant finding there were liens upon the property, referred witness to Hammond, as the attorney of certain plaintiffs in *fi. fa.* Went to Hammond, told him the facts of the case, and requested a a statement as to the *fi. fas.* He gave witness a letter to claimant, upon reading which the latter expressed himself satisfied, and paid the purchase money. There were some other liens on the land, which were settled or paid off out of the purchase money, witness giving orders therefor upon claimant. The balance was then paid to him.

The letter from Hammond to Dobbins was then introduced

in evidence. It stated that the writer had exclusive control over the *fi. fa.* of Phillips, assignee of Wilson, and another in favor of one Griffith; that the amount of both of these on August 29th, 1869, was $1,659 88; that, in his judgment, there was more than enough of other property subject and still unexhausted, to settle this demand; that the entire estate of Morrison, trustee, was liable, and should be put between the *fi. fas.* and Dobbin's purchase; and that he would release this land, but for the fact that it would vitiate the lien on other property of defendant in *fi. fa.*

A. M. Perkerson testified that he was deputy sheriff in October, 1872, and the levy of that date was made by him. Is always very careful to give written notice. Does not remember giving notice in this particular care, but is confident, from his usual practice, that he did so.

W. R. Phillips testified as follows: Owns the *fi. fa.* in question. Bought it from John T. Wilson, and paid him the full amount due on the 8th of April, 1867. It was put into the hands of D. F. Hammond, as an attorney, for collection, and no other control of it was given to him. It was to be collected by Hammond, and the proceeds to be applied to the settlement of a claim held by him against witness. He had no authority to release any property from the lien. Knew nothing of the letter to claimant until after it was written, and never assented to it directly or indirectly. Never gave any directions as to the making or dismissing of the levies which appear on the *fi. fa.*

D. F. Hammond testified as follows: Sued to judgment the *fi. fa.* in the name of John T. Wilson. W. R. Phillips bought it and took a transfer. Witness had in his hands a claim against Phillips, and the *fi. fa.* was given to him as collateral security, without any instructions to collect. When the letter to claimant was written, witness thought there was sufficient property still bound for the payment of the *fi. fa.*, without that which claimant wished to purchase. There was a rapid decline in the value of the property, and the amount realized did not meet the demand. The letter was simply an expres-

sion of opinion as to the means attainable for paying off the *fi. fa.* Feeling confident that there was enough without this property, he agreed to exhaust other sources before coming to this. When the first levy was made, claimant came to him and reminded him of the letter. Wishing to keep his promise, witness ordered the levy to be dismissed, and had a levy made on other lands, but it proved unproductive by reason of prior liens. Collection under the *fi. fa.* was not pressed because Phillips was engaged in a suit in which Morrison was an important witness, and he was fearful of giving offense by levying until such suit was settled.

The jury found for the claimant.

Plaintiff moved for a new trial, on the following, among other grounds: Because the court erred in charging the jury, in substance, as follows:

1st. "If you believe, from the evidence, that Hammond was general agent for the management of the *fi. fa.*, so as to have the right of levying on or releasing the land, or that he acted under instructions from plaintiff, or that plaintiff knew and did not disapprove of Hammond's action, and that Hammond intentionally induced claimant to purchase the land, and pay out money therefor, believing that he would not be disturbed by this *fi. fa.*, plaintiff will be estopped from now enforcing it."

2d. "If you believe, from the evidence, that claimant was a *bona fide* purchaser (*i. e.* without collusion, but in good faith and for a valuable consideration) and that he remained in possession four years without disturbance, he was freed from the burden of the lien. A lawful levy, with written notice to tenant in possession, and advertisement of the land, *bona fide*, for the purpose of enforcing the lien and bringing the land to sale, is such disturbance. A mere' levy, without written notice, is not. If the levy was not *bona fide* for the purpose of sale, but through forgetfulness of counsel, and he dismissed it upon being reminded of his promise, this does not amount to such disturbance of title as would prevent the lien being lost."

The motion was overruled and plaintiff excepted.

D. F. &. W. R. HAMMOND; E. N. BROYLES, for plaintiff in error.

B. F. ABBOTT; JOHN D. CUNNINGHAM, for defendant.

JACKSON, Judge.

1. The main question in this case is whether a purchaser for value, *with actual notice or knowledge of a judgment*, is a *bona fide* purchaser, and within the protection of the four years' possession secured by the Code, section 3583? Upon that question I am requested to deliver the opinion of the majority of the court at the same time that I give my own reasons for dissenting from that opinion and the judgment which necessarily follows it. The majority of the court construe all the statutes in relation to this subject together, and base their opinion mainly upon the idea that the words *bona fide* in the act of 1855–'6, and in the Code, were intended by the law-makers to mean the same thing as the words "*without actual notice of such judgment*," which are the words used in the acts of 1822 and 1852: Cobb's Digest, 437; Acts of 1851–'2, 238; Acts of 1855–'6, 236; Code, section 3583. The words, "for a valuable consideration," appear in all the acts; the words "*bona fide*" are not in the act of 1822 or 1852. The act of 1852 amended the act of 1822 only in respect to time, protecting four years' possession in the same way and to the same extent that seven years' possession was protected by the act of 1822. The act of 1856 leaves out the words "without actual notice of the judgment," and inserts "*bona fide*," and the Code follows the act of 1856. Now, my brethren think that the fact that the words "without actual notice" are left out of the act of 1856, and the words "*bona fide*" put in, the latter words are put in in lieu of the former, and are intended to convey the same idea, and they say certain provisions of the Code and decisions of this court can be cited to the effect that the terms "*bona fide*" and "without actual notice" are equivalent, and mean substan-

Phillips *vs.* Dobbins.

tially the same thing. They, therefore, hold that no man can be a *bona fide* purchaser, so as to bring himself within the protection of the Code, in section 3583, who has actual notice of the judgment, and reverse the ruling of the majority of this court in *Sanders vs. McAffee*, 42 *Georgia Reports*, 250.

2. In respect to the letter of the attorney at law, Mr. Hammond, we all think it was not intended to be a release of this property from the lien of the judgment, and if it had been so intended and its words had so imported, the majority of the court are clear that the attorney at law to collect this claim, had no right to release any property from the lien of the judgment without the consent of his client, and that the peculiar facts of this case do not clothe the attorney with any but ordinary powers. In the judgment of a majority of this court, therefore, Mr. Dobbins is protected neither by his four years' possession nor by the paper or letter written to him by Mr. Hammond, the plaintiff's attorney. I differ from my brethren decidedly on the first point, and I think that the transaction between Mr. Dobbins and Mr. Hammond, and the the facts of the case, generally, throw great light upon the "*bona fides*" of the purchaser, and make the case as clear as a sun-beam

In the first place, "*bona fide*" in latin means "*good faith*," nothing more, nothing less. The words when anglicised, used in English, common every day parlance, mean precisely the same thing. Hence the dictionary says the word anglicised means "in good faith, without fraud or deception:" Webster's Unabridged Dictionary, 135. This, then, is the ordinary signification of these words, and the Code declares that in construing this statute I shall apply this ordinary signification to these words, unless they are words of art or connected with a particular trade or subject matter: Code, section 4. They are not words of art, they are connected with no trade, the subject matter is the lien of judgments in respect to the purchase of land and its possession. The subject matter being such purchase, and the words applied to the purchaser, I feel bound to apply to them their ordinary signification as

used in connection with this subject matter.   Turning, then, to Bouvier's Law Dictionary, volume I., 211, I find the same definition, to-wit:  " good faith, honesty, as distinguished from bad faith."  "A purchaser *bona fide,*" says the same authority, "is one who actually purchases in good faith," quoting Kent, and numerous authorities.

These words do not mean notice or want of notice.   It is true that want of all knowledge of the existence of the judgment would preclude all idea of bad faith in the purchaser to the plaintiff in judgment, of all collusion of any sort with the defendant; but it does not follow that knowledge of the existence of the judgment is proof conclusive of bad faith towards the plaintiff or of collusion with defendant, or of deception of any sort.   It may be a circumstance which, when connected with other circumstances, such as getting the land at a less price or letting defendant cultivate a part of it, might show bad faith, but standing by itself it cannot mean bad faith and be conclusive evidence, which nothing can rebut, of such bad faith.   The facts of the case at bar are conclusive to my mind of the force of this reasoning.   If ever there was a *bona fide,* honest purchaser for value upon earth, Dobbins is one.   He bought the property through a real estate agent, Adair; paid full value for it; paid off certain judgments upon it; and hearing that these judgments were outstanding, went to Adair and told him he could pay no more money to go to defendant, Morrison, until these were satisfied, or he got a good title clear of these incumbrances.   Adair went to Hammond, who held the judgments as collateral security on a debt Philips owed Holliday, and on another debt Holliday owed Reynolds.   So there were three persons interested in the judgments—Reynolds, Holliday and Phillips.   Hammond held them as attorney for all three; said he controlled them exclusively, and wrote the letter embodied in the evidence to Dobbins, at Adair's request, and on the faith of that letter Dobbins paid over the balance of the money to Adair, which otherwise would have been used by him to pay these judgments off.   The letter informs him that there is ample

Phillips *vs*. Dobbins.

property bound as purchase money for the judgments and besides all the estate of Morrison, as trustee, is so bound, and. the only reason the writer would not release the land Dobbins bought, is that, in law, it would release all the other property. Of course Mr. Hammond meant that he would have given a valid release, and got the necessary signatures to it, if his own would not have done, thereby indicating his exclusive control of the *fi. fas.* more fully to Dobbins' mind.

Are not these facts conclusive of good faith in Dobbins? What deception did he use toward anybody? What bad faith? If no bad faith, then his faith was good, and his works show it to be good. Every act of his is the fruit of good faith. There was no deception, no fraud, no collusion, no trickery in what he did. He did not make one cent by it, but was induced by the attorney of the three interested parties to pay the money, the full value of the land, to Adair, when he would have paid it to these judgments. That attorney was the only human being to whom he could have gone for information and direction. He could not have paid the judgment to Phillips for Holliday was inested, nor to Holliday for Reynolds was interested. Nor to Reynolds for the other two were interested. The attorney, Hammond, was the only person with whom he could deal in respect to these judgments because he was attorney for all parties in interest, and he alone represented all and could guard the interests of all.

It is true Hammond did not release the land, but he induced Dobbins to part with his money upon representations which he made. At all events he communicated to Dobbins facts and made representations upon which Dobbins acted, and which show conclusively the good faith of Dobbins toward the plaintiff in *fi. fa.* and the absence of all collusion with the defendant. These facts rebut any presumption which could arise from knowledge of the *fi. fa.*, and show Dobbins to have been an innocent purchaser for value, acting *bona fide*, and holding his honest purchase for four years. It cannot affect the question that Hammond's representations be thought truthful at the time. If they turned out to be false and fruit-

less, and a third party was damnified who acted on them, the effect is the same; and whose is the fault that they turned out to be false and fruitless? Hammond swears that it was owing to the depreciation of the property consequent upon time, that he failed to make the money out of the other property, and that Phillips, *the plaintiff now pressing this fi. fa.*, would not let him press the collection of the judgment from Morrison, because he had a law suit against Solomon, security for Morrison, of much more importance and value, and Morrison's testimony was important against Solomon in that case, and he must keep friends with him until that case was tried. So that the depreciation of the other property of defendant made it necessary for Hammond to press this judgment on this land, that depreciation was caused by time, and that time was needed by the plaintiff in *fi. fa.* until defendant in *fi. fa.* had testified for him in another case. It does seem to me if there was any deception, collusion, or fraud, it lay somewhere between the plaintiff and defendant in *fi. fa.*, and the claimant, Dobbins, was perfectly innocent of it all. Yet the single fact that he knew the existence of this judgment is made to outweigh all these circumstances which, to my mind, cover his case with equities thicker than shingles or slate cover any house in Atlanta.

I think, therefore, that this case illustrates the propriety of the decision of the majority of this court in *Sanders vs. McAffee,* 42 *Georgia Reports,* 250, and I submit the foregoing additional reasons to those given by Judges LOCHRANE and McCAY in that case. So far from agreeing that leaving certain words out of a preceding statute and inserting other and different words in a subsequent one on the same subject matter, show that the legislature meant that the new words should convey the same idea with the old words, though different in ordinary parlance and legal signification, I think that fact shows just the opposite; that they intended to change the meaning *because* they *changed the words.* If they had meant *the same thing* they would have used *the same words.* The fact that such a lawyer as Judge CONE was the author of

the change made by the act of 1856, strengthens my conviction that the meaning was intentionally changed. In respect to the levy made within the four years' possession, and immediately dismissed, I have to say, that in my judgment it does not amount to a disturbance so as to affect the peaceful possession of four years. It must be pressed, and if not prevented by legal impediments, such as claims or illegalities, kept moving at least, if not pushed to an eviction. Besides, the claimant had no legal notice of the levy. In view of all the reasons I can bring to bear upon the subject, I feel constrained to adhere to the ruling of the majority of this court in the case cited from 42*d Georgia Reports*, and to dissent from the majority in the case at bar. I think that to permit this *fi. fa.* to sell Dobbins' land, purchased under these circumstances, and held for four years in peaceable possession, is not only to violate the plain letter of section 3583 of our Code, but to disregard and nullify the spirit and equity of that statute, and to permit covin and deception to overthrow plain dealing, honesty and good faith.