DANIELLY, administrator, *vs.* COLBERT, administrator.

[HALL, Justice, being disqualified, Judge HUTCHINS of the Western Circuit presided in his stead.]

1. A person may be a *bona fide* purchaser of land, notwithstanding he purchased with notice of the lien of a judgment. Such notice is only *prima facie* evidence of *mala fides*, and may be rebutted by showing good faith toward the judgment creditor, and is a circumstance to be considered with other evidence on the question of the *bona fides* of the purchase and possession.

(*a.*) Previous cases reviewed. 42 *Ga.*, 250; 56 *Ib.*, 617; 64 *Ib.*, 706; 69 *Ib.*, 712.

2. The verdict being required by the law and facts, a reversal will not be granted for an error in the charge.

3. Where a cause of objection to a juror is known to parties, and they either intentionally or by negligence or forgetfulness, fail to avail themselves of it before, they will not be heard to complain after the verdict.

November 20, 1883.

Debtor and Creditor. *Bona fides.* Notice. Judgment. Titles. Statute of Limitations. Jurors. Waiver. Before Judge SIMMONS. Crawford Superior Court. March Term, 1883.

Reported in the decision.

BACON & RUTHERFORD, by brief, for plaintiff in error.

GUSTIN & HALL, for defendant.

HUTCHINS, Judge.

This was a claim case, in which the claimant relied on the proposition that he had *bona fide*, and for a valuable consideration, purchased the land levied on, and had been in the possession of it for four years, and that it was discharged from the lien of the judgment, under the provisions of section 3583 of the Code.

The facts presented by the record are, in substance, as follows:

On November 9, 1868, Colbert, as administrator of Harris, obtained a judgment against C. C. Whittington, principal, and James N. Mathews, security, upon which execution was issued September 27, 1871. On July 31, 1873, Preston, the sheriff, levied the *fi. fa.* on the lot of land described in his entry. To this levy the defendant, Whittington, interposed an illegality, and further proceedings thereunder were suspended until the illegality was finally disposed of, sometime subsequent to April 14, 1874, when a judgment was rendered therein by this court.

On October 1, 1875, Danielly, the then sheriff, for some reason not apparent, the levy of July 31, 1873, standing undisposed of and decided by the superior court to be legal, relieved the *fi. fa.* on the same property, and gave notice thereof to Hancock, who held possession under John W. Whittington. Thereupon, a claim to the east half of the lot levied on was interposed by said John W. Whittington, who having died pending the issue formed thereon, plaintiff in error was made a party in his stead. It appears from the evidence that the defendant, C. C. Whittington, was in the possession of the land at the date of the judgment, and thenceforth to the close of the year 1870. He testified that he sold the land to claimant " in the spring of 1868," in settlement of an indebtedness growing out of their father's estate; that he had theretofore given him a mortgage on it, and that he remained in pos-

v 71–15

session afterwards as the tenant or agent of claimant. Excepting the statements of the parties themselves, who were brothers, no evidence of indebtedness or of a sale at that time, was produced on the trial. Defendant returned the land as his own property for taxation in the years 1868, 1869 and 1870, and in January, 1870, had it embraced in a homestead obtained by him, and on November 27, 1870, and not before, made a deed to claimant, his wife joining him, and conveying the land as a portion of their homestead.

Claimant was in possession, by his tenant Wright, in 1871, but it does not satisfactorily appear who, if any one, was in possession in 1872 and 1873.

The admissions and declarations of the claimant, as testified to by Wright, Hancock and Mrs. Harris of his knowledge of the existence of the judgment, and of its being a "better claim" than his; of his inability to make Hancock a valid title; of his desire to settle or compromise the judgment debt; of his intention, upon failing to settle the judgment, to shelter himself behind defendant's homestead, and litigate in order to realize as much as possible from the use of the land, were all important circumstances to be considered on the trial of the issue.

On the trial, the jury found the property subject to the plaintiff's execution. A motion was made for a new trial, on the grounds therein set forth, those chiefly relied on being: "Because the court charged the jury that if the claimant had actual notice of the judgment at the time he purchased the land, that he was not a *bona fide* purchaser, that the statute did not run in his favor, and that four years' possession would not divest the land of the lien of the judgment;" and because the court refused to charge that the fact of notice of the judgment at the time of the purchase, alone would not prevent claimant being a *bona fide* purchaser. The motion for new trial was overruled by the court, and claimant excepted.

1. This court have heretofore divided on the construc-

tion of this section of the Code. In *Sanders vs. McAfee et al.*, 42 *Ga. R.*, 250, a majority—Lochrane, C. J., and McKay, J.,—held that where a person has *bona fide*, and for a valuable consideration, purchased real property and remained in possession of it four years under his purchase, undisturbed by a judgment against the vendor, the property is discharged from the lien of the judgment, notwithstanding he had notice of the judgment at the time he purchased, Warner, J., dissenting. In *Phillips vs. Dobbins*, 56 *Ga.*, 617, a majority—Warner, C. J., and Bleckley, J.,—reversed this ruling, and held that no person, in the sense of this section, is a *bona fide* purchaser, who has actual knowledge of the judgment; and that it "does not protect one who purchases with notice that the property is subject to the lien of a judgment at the time of the purchase,"—Jackson, J., dissenting. In *Prater vs. Cox et al.*, 64 *Ga.*, 706, the majority—Warner, C. J., and Crawford, J.,—coincided in the majority opinion in *Phillips vs. Dobbins*, Jackson, J., still dissenting. Again, in *Broughton et al. vs. Foster*, *ex'r*, 69 *Ga.*, 712, the court being still divided, the majority—Jackson, C. J., and Hall, J.,—agreed with the majority in *Sanders vs. McAfee et al.*, and Crawford, J., dissented.

Under these divisions, the law has not operated uniformly and equally. The purchaser who may have shown good faith in his purchase and possession, notwithstanding notice of the judgment, and been successful in his claim under one ruling, would have failed, because concluded by the other. Where judges so eminent for learning and ability differ, doubts will exist, and it is better that the differences which have caused these divisions and doubts be removed, so far as a unanimous judgment of this court can effect it.

Concurring, therefore, in the majority opinions in *Sanders vs. McAfee et al.*, and in *Broughton et al. vs. Foster*, *ex'r*, and in the dissenting opinions in the cases cited in the 56 and 64, and adopting, by reference to them, the

reasons given in support of the ruling, we hold that, in the sense of this section of the Code, a person may be a *bona fide* purchaser, notwithstanding he purchased with notice of the lien of the judgment; that such notice is only *prima facie* evidence of *mala fides*, and may be rebutted by showing good faith towards the judgment creditor, and is a circumstance to be considered with other evidence, on the question of the *bona fides* of the purchase and posses-sion.

2. But while we overrule the judge below on this point, we are satisfied that the verdict is correct, and such as was required by the evidence, and that justice has been done. The transaction between the defendant and claimant looks more like an intention to delay or defraud the creditor than a *bona fide* purchase and a four years' possession under it. When the verdict is in accordance with the law and facts of the case, it cannot be said that the jury was misled by an erroneous instruction; and as another trial ought to produce the same result, we will not reverse the judgment overruling the motion for a new trial.

3. Where cause of objection to jurors is known to parties, and they, either intentionally or by negligence or forgetfulness, fail to avail themselves of it before, they will not be heard to complain after verdict. 26 *Ga. R.*, 431.

Let the judgment of the court below be affirmed.