ELI B. SANDERS, plaintiff in error, *vs.* A. B. McAFFEE *et al.*, defendants in error.

1. Where upon the trial of claim, it appears that the claimants bought from the defendants in *fi. fa.* real estate, and the judgment was rendered before the purchase, and the claimants have been in possession over four years prior to the levy, and on this state of facts the lower Court was requested to charge the jury, "If claimants had actual notice of the judgment of plaintiff when they bought, then they were not such *bona fide* purchasers in the sense of the law, as can be protected against the judgment by a four years' possession prior to the levy," which the Court refused :

*Held,* That such refusal by the Court was not error, but was in conform-

Sanders *vs.* McAffee *et al.*

ity with the decision of this Court in 39th Georgia; that the right of the plaintiff in *fi. fa.* to enforce his lien on land sold by the defendant and held in possession by a *bona fide* purchase, existed with the condition that the levy be made within four years after the commencement of the possession.   LOCHRANE, C. J.

2. *Held,* That the lien of judgment does not constitute a right of property in the thing itself, but only a right to levy on it and sell it, and this under conditions and limitations of law ; and while all the property of the defendant is bound from the date of the judgment, it is not such *a lien on all,* as constitutes bad faith in a purchase of part, if ample property was left in defendant's possession ; such purchase may be in the strictest sense *bona fide*; for the *lien* only exists in fact upon suffi ciency of defendant's estate to satisfy it, and excess in levies are trespasses under the law.   LOCHRANE, C. J.

3. *Held,* That the purchaser from defendant in *fi. fa.*, for valuable consideration holds adversely, from the commencement of his possession to the judgment creditor, and with notice to him that at the expiration of the four years his property ceases to be subject to levy, for the satisfaction of his judgment; and it requires diligence on his part to comply with the provisions of the law, in collecting his debt out of the defendant's property.   LOCHRANE, C. J.

4. *Held again,* That a purchaser who buys property from a defendant in *fi. fa.* is not *per se* committing fraud; the judgment being a lien, the purchase is no fraud, for the creditor can levy on it any time to make his money, within four years.   And if the purchase is not a fraud, the notice cannot make it so; for with or without notice, the lien can be enforced, within the time, by the creditor, and if the presumption of fraud is made to depend on the lapse of time, or after the four years from notice, it would be a violation of all the rules of law to authorize such presumption.   LOCHRANE, C. J.

5. *Held again,* That, inasmuch as judgment creditors are neither hin· dered or debarred in the collection of their debts by such purchase from the defendant in *fi. fa.*, the purchase is not in any legal sense fraudulent; and when the consideration has been full and ample, in the sense of the law, the purchaser is a *bona fide* purchaser within the meaning and provisions of the Code.   LOCHRANE, C. J.

6. *Held again,* That if the purchase of a part of the estate of another, upon full consideration, without any legal fraud, even though it divest the rights of creditors whose claims are not in judgment, is *bona fide*, much more will it be regarded so, as against judgment creditors whose liens are not divested, and who are neither hindered nor delayed in collecting their debts by such purchase.   LOCHRANE, C. J.

7. *Held again,* That *bona fide,* as applied to purchases for valuable consideration, in the law, means such purchasers as act without *covin, fraud or collusion,* one who in the commission or connivance at no

fraud, pays full price for the property, and in good faith honestly and, in fair dealing, buys and goes into possession. And, as to such purchaser, the law will protect him in his title after the lapse of four years. LOCHRANE, C. J.

McCAY, concurring.

A *bona fide* purchaser for a valuable consideration of real property, who has remained in possession of the premises four years under his purchase, undisturbed by a judgment against the vendor, holds the property discharged from the lien of the judgment, notwithstanding he knew of the existence of the judgment at the time of the purchase.

WARNER, J., dissenting. Four years possession of land by one having actual notice of a judgment lien thereon, does not defeat such lien. (R.) ·

Claim. Lien. *Bona fides.* Before Judge HARRELL. Randolph Superior Court. May Term, 1870.

The other cause of Sanders *vs.* McAffee & Owen, at this term, was an effort to defeat a vendor's lien against certain land therein mentioned. Besides this they were endeavoring to collect their said *fi. fa.* by a levy on the land. The judgment was dated the 4th November, 1863, in favor of Sanders *vs.* S. W. Anthony, and the *fi. fa.* issued upon it was levied upon said land in December, 1868. McAffee & Owens claimed the land. On the trial of the claim, the plaintiff read in evidence the *fi. fa.,* proved that S. W. Anthony was in possession of the land in December, 1863, and closed.

For the claimants it was admitted that they bought the land from defendants in *fi. fa.* on the 8th of January, 1864, paid the purchase-money, took titles from said defendants in *fi. fa.* and had occupied the land from thence to the time of the trial. The other evidence was as is set forth in the cause of Sanders *vs.* McAffee & Owens.

Plaintiff's counsel asked the Court to charge the jury that "if claimants had actual notice of plaintiff's judgment when they bought, then they were not such *bona fide* purchasers, in the sense of the law, as can be protected against the judgment by a four years' possession prior to the levy." He refused so to charge, but charged that "if claimants had *bona*

Sanders *vs.* McAffee *et al.*

*fide* and for a valuable consideration bought said land, and had been in possession thereof for four years before the levy of the *fi. fa.*, the lien of the judgment was discharged, otherwise, not." The jury found the property not subject. The refusal to charge is assigned as error, and the verdict is said to be strongly and decidedly against the weight of the evidence.

JOHN T. CLARK, for plaintiff in error, said *bona fide* negatived the idea of notice of the lien, and as to meaning of *bona fide* cited Act of December, 19th, 1822; Cobb's N. Digest, 496, 497; 7th Ga. R.. 166; 14th, 157–8; 3d, 448; 25th, 58; 27th, 641, 642, 644; 29th, 488; 34th, 385, 454; Add. on Con., Mar., p. 215 to 219, inclusive, also 262; Story on Promissory Notes, sections 191, 192, and Note 2; Irwin's Code, sections 2743, 2745, 2597, 2598, 2608, 2851, 2855, 2323, 2328; 38th, 18; 39th, 342, 347, 421. Notice was proved: Evidence and 14th Ga. R., 157–8–9.

H. FIELDER, for defendant.

LOCHRANE, C. J.

1. This case comes before the Court upon error assigned on the refusal of the Court below to charge the jury: "If claimants had actual notice of the judgment of the plaintiff, when they brought the land in controversy, then they were not such *bona fide* purchasers, in the sense of the law, as can be protected against the judgment by a four years' possession prior to the levy." This the Court refused, and charged the jury: "If claimants had, *bona fide*, and for a valuable consideration, bought said lands and had been in possession thereof for four years before the levy of the *fi. fa.*, the lien of the judgment was discharged, otherwise, not." The jury found the property not subject.

Section 3525 of the Revised Code is in the words charged by the Court below, as applicable to this case, and the naked

question before us is, whether a purchaser, for a valuable consideration and in possession of the property for four years, if he had actual notice of a judgment existing against the vendor at the time of the purchase, can he be held, in law, to be a *bona fide* purchaser, and within the provisions and protection of the Code. In *Chapman vs. Akin,* 39 Georgia, 347, this Court held, in construing this section, that it ran in favor of a *bona fide* purchaser, and was not suspended by the Acts suspending the Statute of Limitations, and the right, whatever it may be, of the plaintiff in *fi. fa.* to enforce his liens on land sold by the defendant and held in possession by a *bona fide* purchaser, existed, with the condition annexed, that the levy be made within four years after the commencement of the possession ; and, as the plaintiff made no such levy, he lost his lien by failure to enforce it, in accordance with the condition to which it was subject and with which he never complied."

This decision disposes of the question in this case, except so far as the necessity invoked by the request involves the opinion of this Court on the meaning of the term *bona fide,* in the connection in which it stands in this section.   It will be remarked that the judgment of this Court, in 39 Georgia Reports, places no qualifying words to the term *bona fide,* and Chief Justice BROWN, in delivering the opinion, does not interpolate with the law the words "actual notice" as definitive of the term.   He simply states, by way of recital, that there was no pretense of actual notice of the judgments being had by the claimants in that case.   We, therefore, proceed to adjudge the question as to whether the term *bona fide* in the Code, and used by this Court, without definition as stated, means such purchaser as had no actual notice of the judgment at the time of the purchase.

The request presented the theory of the law held and ably argued in this case by counsel for plaintiff in error.   There is no admixture of terms and principles ; the request is open and plain.   "If claimants had actual notice of the judgment

of the plaintiff when they bought, then they were not such *bona fide* purchasers, in the sense of the law, as can be protected against the judgment by a four years' possession prior to the levy." This is the plain proposition which was requested, and the refusal to charge which is assigned as error. We do not think the Court erred in refusing to give this request to the jury, under the facts of this case.

2. It is contended that all the property of the defendant is bound for the judgment. Such is the law, by the Judiciary Act of 1799, and by the Code. But how bound? Is it a property right in the plaintiff covering all the defendant's estate, which makes any person purchasing a part guilty of committing fraud on his rights? We think not. The lien of a judgment does not constitute a right of property, in the thing itself, but only a right to levy on it and sell it: 4 Florida, 126. And even this right is limited, and excessive levies are trespasses, in the law.

Lien of judgment is general and not specific, and gives no property in the thing: 27 Miss.; 5 Cush., 679. And the limitation upon their enforcement is governed by the amount of the lien. Again, this lien is not only limited as to how much it shall be levied on, but as to the class and kind of property—first, that in the possession of the defendant. Again, if the property has been sold by levy of the junior judgment, the older can only come in and claim the money: 8 Gratt., 179; 9 Georgia, 164. That a judgment creditor, having waived his right to subject the property first liable, cannot go on the next, is a proposition held in 8th Gratt, 179, above quoted; showing that the rule is too broadly stated, if intended to mean that all a man's property is incumbered with the judgment lien against the owner, and that it is fraud for him to sell any of it, and fraud to buy any from him. This is not the meaning of the law; for neither law nor equity, even on a debt reduced to judgment and suspended from levy by appeal, will restrain a sale of a part where enough is left to meet the judgment. The meaning, "all the

property is bound from the judgment" means all necessary to pay it, for the lien is only for so much, and can be levied on no more.

.. This Court has laid down analogous doctrine in the case of *Scott vs. Winship*, 20th Georgia, 429, in holding : " The rule that the sale of the whole of one's property is a badge of fraud, does not apply where a small part is sold ;" thus recognizing the principle that the purchase of a part of the property of the defendant in *fi. fa.*, where he has ample property left to discharge the judgment lien is no fraud upon the judgment creditor, and is, therefore, *bona fide* upon the part of both the seller and buyer.   In the enforcement of the judgment lien we have thus far shown the limitations of the law, not controverting the general principle that judgments bind all the property of the defendant, as laid down in 19th Georgia, 452.

3.  But as to the reasonable construction of such a general rule, and to show that the lien has a right to be enforced by levy and sale on sufficiency of the property to satisfy it, and not an estate in the property of the defendant in *fi. fa.*, that it is a right, the enforcement of which is upon condition that it shall be asserted within four years, upon any property aliened after its existence, if necessary to levy on such property to satisfy its demand.   This is the opinion of the Court, and consequently notice of its existence does not change the rule. The purchaser, *bona fide* and for valuable consideration, from the hour he goes into possession, is holding adversely to the judgment creditor as to the property he has bought from the defendant in *fi. fa.*, with notice to him that, at the expiration of the four years, his property ceases to be subject to levy for the satisfaction of his judgment ; and if the creditor does not move within this time to collect from the defendant in *fi. fa.*, he loses his lien upon the estate so held adversely to his right : provided that he is a *bona fide* purchaser for valuable consideration ; and, in the opinion we entertain of the law, he may be a *bona fide* purchaser with notice of the judgment and

Sanders *vs.* McAffee *et al.*

except there be *fraud* in his purchase, he will be protected upon his four years' possession.

4. A purchaser who buys property from a party against whom there is an outstanding judgment is not, *per se*, committing fraud, if he pays full price. The Act of 1822 contained the words *actual notice ;* this section of the Code does not. It simply says a *bona fide* purchaser. What fraud can such purchaser be supposed to inflict on a judgment.creditor ? If the judgment is a lien, the purchase is not a fraud, for the creditor can levy on it any time within four years to make his money. Notice cannot in such case make it a fraud. The party buys, taking the risk of the enforcement of the lien, but that risk expires by law in four years. If the creditor permits the time to lapse, it is his own fault and ought not to be attributed to fraud in the purchaser ; it abridges no right of the creditor ; for if the defendant in *fi. fa.* has not sufficient property to meet the claim, the lien for four years extends to that which has been purchased. In *Peck vs. Land*, 2 Kelly 1st, it is held " that a sale of property for full price with a view to hinder creditors, is fraudulent." But the purchaser must have knowledge of, and participate in the design. Now, in cases where creditors have judgment on the real estate they are neither hindered nor delayed, and it can work no injury to them, except it may consist in the purpose that the purchaser prefers the defendant in *fi. fa.* to have four years opportunity to work his own property, and then at the end have to pay his debts; for the presumption of such fraud is in the limitation of the time from seven to four years. Can we presume fraud in a purchaser of a part of the estate for full price upon the presumption that the creditor will wait four years on the defendant in *fi. fa.*, and then this fraud is to be perpetrated to his own injury ?

5. We have just shown that the purchase of a part is not a badge of fraud. The case in *20th Georgia*, 437, goes further, in holding the Judge erred in refusing to charge the jury that, if they believed claimant paid a valuable considera-

tion for the negroes levied on, this rebuts the presumption of
fraud," not only arising from the purchase but even where
the continued possession of the property remained in the
party. "Will it be pretended," said the Chief Justice,
LUMPKIN, "that if Mrs. S. paid to her son a valuable con-
sideration for the property in dispute, her permitting it to
remain with her son would subject it to antecedent and
pre-existing debts? That her son may have attempted to
run off the property, with a view to cheat either his mother's
creditors, or both, is quite possible; but unless his mother
knew of it and connived at it, it cannot prejudice her title or
cast suspicion upon the *bona fides* of the sale from her son to
her." This language is strong, and bears the impress of
feeling in the enumeration of the principles it decides. There
is neither doubt nor uncertainty in the conclusion; and a
*bona fide* purchaser is presented, under the rule, as one who
has paid valuable consideration for the thing purchased and,
applied to this case, under the lapse of time, has acquired a
perfect title, free from all incumbrance of lien.

6. And this very idea prevailing in Judge LUMPKIN's
mind, in delivering this opinion, as a sentiment of justice, is
drawn from the highest authorities of the law, and may be
found in the decision of Lord Romilley, M. R., in the Law
Reports, Equity Cases, volume 3d, and by Lord Chelmsford,
L. C., in the case of Howard vs. the Earl of Shrewsbury.
Where valuable consideration is paid for property, and there
is no intent to defraud, the purchase is held *bona fide*. If
we go up the stream of authorities to the fountain, we find
in the thirteenth year of the reign of Queen Elizabeth, 1570,
or over three hundred years ago, estates upon good considera-
tion and *bona fide*, were held to be valid. See section VI.
of the Act.

7. And the facts which negative the *bona fides* of the
transaction are enumerated as notice or knowledge of
"covin, fraud or collusion," in the terms of the Act. The
principles of this statute have crept into all the legislation

and judicial expositions of the law since. Notice enters into the ingredients that may, in proper cases, apply to fraud, where the intrinsic unfairness of the transaction arising from inadequacy of price or misrepresentation, or suppression of facts known, or when the evidence attending the sale is apparently inconsistent with honest purpose or fair dealing, or many other causes or cases that might be recited. Notice showing participation, connivance, covin, fraud or collusion, would properly go to the jury for their consideration—and this upon the settled and established principles of law found in all the books. But in all questions of good faith, adequacy of price, from first to last, is an unquestioned evidence of the *bona fides*. In some cases it is not sufficient, but in all cases it is regarded with the very highest consideration. When a party purchases and pays full price, it is not *malus dolus* as to creditors existing at the time, except the purchase is made to hinder or delay creditors, and the purchaser participates in the intent, or is in violation of some rule against preference to creditors, should the purchaser be also a creditor. And if inadequacy of consideration is not *mala fides* as to creditors generally, upon what principle does the fact that the debts are in judgment change the rule? The reason gathers strength applied to creditors who are divested of all rights to levy or collect their debts, but dwindles into evanescent diminution applied to those who are neither hindered nor delayed, and cannot be injured unless they voluntarily delay collecting their debts for over four years. All the reason and logic of the law illustrates the contrary.

To reverse the proposition. A party buys an estate from another who has large means to meet the judgment existing. He pays full price, goes into possession and improves it. The plaintiff in *fi. fa.* indulges the creditor by an entry every seven years. The lien continues. The creditor sees the defendant wasting his estate day by day; and, finally when it is all gone, he demands payment from the *bona fide*

purchaser for valuable consideration. Would it not be fraud in the author of the proposition? We have examined the various sections of the Code, the authorities, as far as we could in the short time allowed us, and after a full review and analysis of the principles applicable to this case, and with what seems conflicting in the opinion of my learned predecessor in 39th Georgia, I am clearly of opinion that the term *bona fide* in section 3525 of the Revised Code of this State, means one who, in the commission or participation of no fraud, pays a full price for property which he continuously and openly holds in possession for four years after the sale, and that his actual notice of an existing judgment against the vendor at the time of his purchase is not sufficient, *per se,* to charge him with fraud so as to render his title impotent for his protection, when he otherwise stands within the provisions of the law.

Judgment affirmed.

McCay, J., concurring.

When this question was first presented I was strongly inclined to the opinion that by the words "*bona fide*" in this section of the Code, we must understand, not only "really" and "honestly," but without notice of the judgment. I was led to this by the consideration that equity will not permit one who buys with notice of an incumbrance, to hold the estate free from it. No man can be said to act *bona fide* who, knowing of a lien, seeks to take advantage of the incumbrance by getting the legal title. It is a species of fraud, an attempt to get property from one who the buyer knows has not, in good conscience, the right to sell it.

But upon further reflection, I am satisfied that the equitable doctrine I have referred to has no application to the case provided for by this section of the Code. The words *bona fide,* as here used, must be taken in their ordinary signification, and to interpolate into the language used, the words "without notice," is a violation of the spirit and

meaning of the law.   If it were provided that a *bona fide* purchaser of property under a judgment lien should take it *free from the lien*, if a *bona fide* purchaser for value acquired by his purchase an unincumbered title to the property, then the words *bona fide* might be fairly understood to include within their meaning " without notice;" since it would be grossly unjust, and would be aiding in a fraud to permit a purchaser with full notice of a judgment to buy free from its lien.   But this section of the Code makes no such provision.   By our law, a purchaser, with or without actual notice, takes nothing by his purchase as against any judgment liens upon the property.   He always buys subject to such liens, whether he knows of them or not.   The law presumes notice from the record, and it is absurd to say that a purchaser of such property is not *bona fide* unless he buys without actual notice, since, so far as the judgment creditor's right to sell the property is concerned, it is wholly immaterial whether the purchaser is without actual notice or not.   The holder of the judgment has the same right to levy and sell as before, even if the purchaser be wholly ignorant of the lien.   Indeed, to interpolate the words ." without notice " into this section of the Code, as explanatory of the words *bona fide,* is to make the statute wholly nugatory ; since in *this* sense of the words *bona fide* there *can* be no such a purchaser of property subject to a judgment lien.   The law presumes notice, and it is, by the equitable rule we have alluded to, just as much *mala fides* to buy without inquiring at the record office as to buy with actual notice.   The object of this section is not to alter in the least the right of the judgment creditor ; his lien is as good as ever it was.   The purchaser has not hurt him, and there can, therefore, be no *mala fides* as to the judgment creditor in the matter.   Notice of the judgment has, therefore, nothing to do with it, one way or the other, unless, perhaps, it may be used as evidence, to give color to other acts, and

show that the purchase was a sham or not a purchase at all, of the entire property.

The only effect of this section of the Code upon the creditor is not to alter in the least his right of lien, but to say to him, if the debtor, really, *bona fide*, sell the property for a valuable consideration, and the purchaser *takes possession*, you must assert your lien within four years, or lose your lien. You shall not stand by, knowing that one has really bought the property, (and his possession is full notice) and wait until the seller has become insolvent, and the purchaser has no means of indemnifying himself, and then assert your lien.

The object of the section is not to prevent the fraudulent purchase of property subject to judgments, (that cannot be done in this State) but to prevent the holders of judgment liens from using them to defraud third persons. Indeed, that was in substance the declared intent of the Act of 1822, for which this section is a substitute; and the object of the Act is the key to the meaning of these words. The purchase must be *bona fide*. It must be real, not a sham. It must be a purchase of the whole. The buyer must think he is getting the estate without any real drawback. It must be a purchase of the property entire, and not a purchase avowedly with the burden of the lien to follow it. The purchaser, too, must take possession, let the world know that a claim adverse to that of the defendant is set up. Unless this be done the lien of the judgment continues indefinitely, as though there had been no sale.

It is a matter of common observation, that this sort of purchases are an every day occurrence. Defendants in judgments are often persons of large means; and nothing is more common than to buy property knowing that there are judgments against the defendants, and yet, with the utmost good faith, to pay a full price, without any thought of the judgment. As it is a general lien in this State upon all the property, real and personal, wherever found, of the defendant,

one feels that, if he leave abundance in the hands of defendant to pay the judgments, he may safely buy; and men do this, as we all know by every day's observation, without the least fear, and without a thought of *mala fides* as to the judgment creditor.

It is significant, too, that in this section the words "*bona fide*" only are used, while it is almost invariably true that the Codifiers, when they mean to make notice an element in the matter, are careful to add to the words *bona fide* the other words and, "without notice," (see sections 1765, 1768, 1942, 1949, 2228, 2303, 2323, 2590, 2548, 2589, 2608, 2620, 2697, 2743, 3037, 3064.) Whilst there are, so far as I have observed, but two instances in which they have used the words in the sense which includes "without notice," to-wit: 2597, 2748; and both these sections refer to negotiable securities, in reference to which the words "*bona fide*" has acquired a *technical* signification by common usage.

WARNER, J., dissenting.

On the trial of a claim case, the claimants relied on four years possession of the land as *bona fide* purchasers thereof, and the following evidence was introduced, as to the actual notice of the claimant of the existence of the plaintiff's judgment, at the time of the purchase: Owens, one of the claimants, testified, "that when the deeds were about being made and the trade closed up in the office of Stewart, an attorney-at-law, witness asked S. W. Anthony, whether or not there were any *liens* on the land, and Stewart replied that there were none, except one, in Randolph Court, and one in Clay Court, that he was the attorney who had *sued out both claims.*" Goneke testified, that "some time prior to the purchase of the land, in answer to inquiries made of him by the claimants in relation to the same, he told them, that Sanders, the plaintiff, had sold to Dr. Anthony the land; that the debt or a large portion of it was then standing open and in suit, or judgment; cannot

now say that I then knew of Sanders' judgment; I knew of the debt, knew for what it was contracted, and knew it was sued, and may have known that it was in judgment; they sought information from me, and was careful in my statement, desired to communicate all that I knew, so that they might not be deceived." Rev. Samuel Anthony testified, that he was present in Stewart's office, when the claimants and Dr. S. W. Anthony met there to close the land trade. Owens inquired if there were any *incumbrances* on the property. Dr. Anthony replied, "None, except the claim of Sanders, of which I told you, and which Mr. Stewart knows all about." Stewart remarked, that there was nothing against the land, except the claim of Sanders, which was in his hands for collection, and further said, if the Sanders claim should ever come against the land, he, Stewart, would be responsible for it. The execution levied on the land, issued on a judgment obtained in the Superior Court of Randolph county, in favor of Sanders against the Anthonys. The counsel for the plaintiff requested the Court, in writing, to charge the jury " if claimants had actual notice of the judgment of plaintiff when they bought, then they were not such *bona fide* purchasers, in the sense of the law, as can be protected against the judgment by a four years possession prior to the levy," which charge the Court declined to give, but did charge the jury, that "if claimants had *bona fide* and for a valuable consideration bought said land, and had been in possession thereof, for four years before the levy of the *fi. fa.*, the lien of the judgment was discharged, otherwise not. " The charge contained in the request of the plaintiff's counsel was a pertinent, legal charge, in view of the evidence in the record as to actual notice of Sanders' judgment at the time of the purchase of the land by the claimants, and the Court erred in not charging the jury as requested. The question of *notice* was a question of fact for the jury to decide from the evidence in the case. If the claimants did have *actual notice* of the plaintiff's judgment at the time of the purchase of the land,

then they were not *bona fide* purchasers thereof, within the true intent and meaning of the 3525th section of the Code, and the evidence in the record in relation to that fact was quite sufficient to have authorized the charge of the Court as requested.