### RODGERS *et al.* v. ELDER *et al.*

1. On the trial of an issue as to whether one is a bona fide purchaser of property from a defendant in fi. fa., as contemplated by section 5355 of the Civil Code, it is not error for the judge to refuse to charge the jury to the effect that if the purchaser had knowledge of the existence of the judgment at the time he bought the property and promised the defendant in fi. fa. to pay the judgment, his possession of the property for four years did not release it from the lien of the judgment; it not affirmatively appearing in such trial that the promise was made prior to or cotemporaneously with the purchase, nor that there was any consideration for such

promise, and it further not appearing that the plaintiff in fi. fa. ever knew of or acted upon the same. The fact of such knowledge of the existence of the judgment is a matter for the jury to consider, under all the circumstances of the case, in determining whether or not the purchase was in good or bad faith.

The verdict in this case was not only sustained by the evidence, but, in the light of the record before us, was manifestly right; and the court therefore did not err in refusing to grant a new trial.

Argued May 13,—Decided June 14, 1899.

Equitable petition. Before Judge Smith. Wilcox superior court. March term, 1898.

*Cutts & Lawson*, for plaintiffs in error.

*Thomson & Whipple*, contra.

LEWIS, J. J. G. Elder et al. brought their equitable petition in Wilcox superior court, against W. A. Rodgers et al., the plaintiffs in error. The petition made substantially the following case. On the 31st of March, 1891, the petitioners purchased of E. J. Jackson certain lots of land, including the property in dispute. Ham, Adams & Co. brought suit against the vendor, E. J. Jackson, and obtained a judgment for $50.76, on which execution issued February 28, 1891. This execution was never entered on the general execution docket. Petitioners had no notice, at the time they made the purchase of Jackson, that there was any judgment or outstanding execution against him, but, on the contrary, believed that they acquired under their deed title to the land free from all incumbrances. On the 3d day of August, 1895, the sheriff levied the execution above mentioned upon the property in dispute, and sold the same on September 3, 1895, when it was knocked off to the defendants for the sum of $100. The petition alleges that the levy was excessive, and that the property was worth at least $1,000. The sale is attacked on the ground that the fi. fa. constituted no lien on the land, the same never having been recorded on the general execution docket, and defendants having bought more than seven years prior to the levy. It is further alleged that the petitioners mailed the money to the sheriff before the day of sale, for the purpose of paying off this execution. The petition also charges conspiracy and confederation between the sheriff and the purchaser to defraud petitioners and

secure the land in question at an inadequate price. The prayer of the petition is, that the sale by the sheriff be declared null and void, that his deed to Rodgers be cancelled by decree of the court, and that the defendants be enjoined from interfering with the possession of the property by the plaintiffs. On the trial the testimony in behalf of the petitioners substantially made out the case as presented by their petition. As to their want of knowledge of the existence of the judgment at the time the land was sold they were sustained by the defendant in fi. fa., and there was no evidence to contradict them save some admissions made by the plaintiff Elder to the effect that he knew of the existence of the judgment against Jackson and that he promised to pay off the same. But it does not appear from the record that this promise to pay off the judgment or fi. fa. was made prior to or cotemporaneously with the purchase, or to bring about the sale by defendant in fi. fa. It was admitted by Jackson and Elder that after their trade the latter promised to let Jackson have a little money for the purpose of paying off a small claim or two, amounting to about $100. This was merely intended as a loan, after the purchase and payment of full value for the land, and both positively swore that nothing was said about the existence of any judgment. It further appeared from the testimony that there were six lots which had thus been purchased of the defendant in fi. fa.; and that this levy was upon two of the lots, on which was erected a dwelling-house that cost over $1,000. There was a conflict in the testimony as to the value of the other four lots, but we think the weight of it shows that they were amply sufficient to have paid off the fi. fa. It also appeared that the plaintiffs lived in another county from that in which the land lay, and that the plaintiff Elder, who was really the party at interest, intended to pay off the fi. fa., and had an understanding with the sheriff that he would send the money for this purpose. He accordingly mailed the money to the sheriff before the day of sale, but it happened not to reach the sheriff until a few hours after the sale, at about three o'clock on the afternoon of the sale day. He then offered to pay the purchaser the full amount he had paid for the land, namely $100, but the purchaser re-

fused this offer. There was also evidence that the purchaser was related to the plaintiff in fi. fa., and that he was instrumental in procuring the levy on these two lots on which was located the dwelling-house. The jury returned a verdict for the plaintiffs below, and the defendants excepted to the judgment of the court overruling their motion for a new trial.

1. One ground of error alleged in the motion for a new trial is, because the court refused to give in charge to the jury the following written request of movants' counsel: "If you find from the evidence that Elder knew of the existence of the execution in favor of Ham, Adams & Co., and in buying the property from Jackson promised Jackson that he would pay off such debt to Ham, Adams & Co., then I charge you that Elder could not be such a bona fide purchaser as to divest the property of the lien of Ham, Adams & Co.'s fi. fa. by reason of four years possession of Elder. Consequently, if you find that Elder did so promise to pay off the Ham, Adams & Co. fi. fa., then you must find that the fi. fa. was a valid lien on this property, and that the purchaser, Rodgers, acquired a valid title so far as this question is concerned." If Elder ever made any such promise to the defendant in fi. fa., it does not appear that there was any consideration whatever therefor. In the light of the record, if he ever made it at all, it must have been after his purchase and payment for the property, and it was made more as an accommodation for the defendant in fi. fa. himself. There was no testimony that the plaintiff in fi. fa. knew of such promise or acted thereon to his injury. The promise alone, therefore, in the light of the testimony, could not of itself have justified the conclusion as a matter of law that the sale by the defendant in fi. fa. was fraudulent and void. Whether or not a knowledge on the part of a purchaser of the existence of a judgment would per se, under section 5355 of the Civil Code, prevent a vendee of property from being a bona fide purchaser thereof so as to release it from the lien of the judgment after four years possession, was for some time an open question in this court. It was held in the case of *Sanders* v. *McAffee*, 42 *Ga.* 250, that such knowledge by the purchaser of the existence of a judgment at the time did not

make the transaction fraudulent so as to prevent the operation of the four years period of limitation provided for in the statute above mentioned. In that case Warner, J., dissented. In the case of *Phillips* v. *Dobbins*, 56 *Ga.* 617, the contrary was held by a majority of the court, who construed the words of the statute to mean that no person, in the sense of the section cited, is a bona fide purchaser who has actual knowledge of the judgment, and that four years possession will not protect a purchaser with such actual notice. In that case Jackson, J., dissented. In the case of *Prater* v. *Cox*, 64 *Ga.* 706, it was again decided by a majority of this court that such notice by a purchaser of the existence of a judgment prevented the lien thereof from being released after four years possession of the property. In that case Jackson, J., again dissented, adhering to the reason given by a majority of the court in the case of *Sanders* v. *McAffee*, supra, and also adhering to his dissenting views in *Phillips* v. *Dobbins*, supra. In the case of *Broughton* v. *Foster*, 69 *Ga.* 712, it was ruled that notice to a purchaser of a subsisting judgment against the property was only prima facie evidence of mala fides, and that the purchaser might rebut such presumption by showing that he acted in good faith towards the judgment creditor. Crawford, J., dissented in that case. Thus the matter stood when the question again came before this court in the case of *Danielly* v. *Colbert*, 71 *Ga.* 218, when it was decided by a unanimous bench that a person may be a bona fide purchaser of land notwithstanding he purchased with notice of the lien of a judgment. To the same effect is the decision in *Sluder* v. *Bartlett*, 72 *Ga.* 463, which was likewise by a unanimous bench. We may now consider it as the settled rule of this court, that such knowledge on the part of a purchaser is merely a circumstance for consideration by the jury, in connection with all the other evidence in the case, in determining whether or not the purchaser acted in good faith when he bought the property. It is therefore not a question of law for the court to decide, and to instruct the jury that such knowledge would amount to fraud is error. See *Hale* v. *Robertson*, 100 *Ga.* 168.

2. There were other grounds in the motion for a new trial,

complaining of error in refusing to give in charge certain requests of counsel for plaintiffs in error, relating to the excessiveness of the levy. Even if the requests presented were correct as abstract propositions of law, we would not feel authorized to grant a new trial in this case, in the light of the record before us; especially in view of the fact that the very decided weight of the testimony, to say the least, demanded a finding that this levy was excessive and unnecessary. There were four vacant lots left unseized, and the testimony shows that their value exceeded in amount what was due upon the execution. It is true there was some evidence in behalf of the defendants below, to the effect that this vacant property would not probably have brought enough at public outcry to satisfy the fi. fa.; but there was no attempt by the sheriff to test this matter, and witnesses were present on this trial who placed a valuation on the property not levied on (and whose valuation thereof was not contradicted) largely in excess of the debt due plaintiff in fi. fa. In viewing the general aspect of the case from its entire record, we conclude that the verdict of the jury was manifestly right; and, regardless of alleged errors in the refusal of the court to go into detail by giving in charge certain requests which we regard on the general features presented by the record to be immaterial, we will not reverse the judgment of the court below, overruling the motion for a new trial.

*Judgment affirmed. All the Justices concurring.*