REYNOLDS, tax-collector, *v.* HARDIN; *et vice versa.*

Nos. 12316, 12342. NOVEMBER 15, 1938.

W. W. *Armistead,* and *Erwin & Nix,* for plaintiff.

*Hamilton McWhorter, Williams & Freeman,* and *W. D. Tutt,* for defendant.

RUSSELL, Chief Justice. On December 10, 1934, an execution for State and county taxes, dated December 20, 1927, against J. A. Roland, was levied on realty as property of the defendant in fi. fa. A claim was filed by Mrs. Katie Mae Hardin. At the conclusion of the evidence on the trial of the issue the claimant moved that the court dismiss the levy, which motion was overruled. The claimant then moved that a verdict be directed that the land levied on was not subject, on the ground that under the evidence, considered in the light of the Code, § 110-511, the claimant had acquired title freed of the lien of the execution. This motion was sustained; verdict and judgment in favor of the claimant were entered. The tax-collector's motion for new trial, in which error was assigned on the direction of the verdict, was overruled, and he excepted. The claimant by cross-bill of exceptions assigned error on the refusal to dismiss the levy.

As a reversal of the judgment complained of in the cross-bill of exceptions would render nugatory the judgment on which error is assigned in the main bill, it is in order that the assignments of error in the cross-bill be first decided. The motion to dismiss the levy was on the following grounds: "1. That, as matter of law, the levy was excessive. 2. That the tax fi. fa. should not have been levied on the land levied on, which was conveyed by defendant to claimant, before seizing and exhausting property of the defendant that had not been so conveyed. 3. That if said fi. fa. was to be levied on land that had been conveyed by defendant to claimant, there was included in said conveyance vacant land that should have been seized and exhausted before levying on the im-

proved land that was levied on under said tax execution." The property levied on is described in the entry of levy as follows: "All that certain lot in the City of Crawford, Georgia, Oglethorpe County, on which is located a brick warehouse, and bounds on the north by Elbert Street, on the east by an alley running from Elbert Street to Federal Highway, on the south by Federal Highway and on the west by brick storehouse and lot owned by Mrs. J. W. Hansford, same being the lot and store property occupied by J. A. Roland and others." The testimony on the trial showed that there was located on the east part of this lot a brick building, or buildings, one one-story building 42-1/2 feet wide and 72 feet long, and one two-story building 27 feet wide and 65 or 70 feet long, the two being connected by a door at the rear. Included in the property levied on was a vacant lot to the west of the store building, about 90 by 100 feet. It appears that originally the building was constructed as one storehouse, but was later divided. The valuation placed on the one-story building varied from $1000 to $4000, on the two-story building from $750 to $2000, and on the vacant lot $500. The amount due on the tax execution involved, at the time of the levy, appeared to be $486.76 principal, $238.51 interest, and cost. Under this evidence we do not think the court was required to adjudge, as a matter of law, that the levy was excessive. The motion of the claimant was not that the question of the excessiveness of the levy be submitted to a jury, but that the court order the levy dismissed on the ground, among others, that it was excessive. "The issue raised by the allegation that the levy was excessive can not be settled by the court upon demurrer. It must be submitted to a jury, under proper instructions of the court." *Clark* v. *C. T. H. Corporation,* 181 *Ga.* 710 (12) (184 S. E. 592).

The second ground of the motion, that the fi. fa. should not have "been levied on the land levied on, which was conveyed by defendant to claimant, before seizing and exhausting property of the defendant that had not been so conveyed," is entirely without merit. The taxing authorities are not required, in the collection of taxes, to limit the levy to property of the defendant in execution which has not been alienated at the time of the levy. "Taxes to be paid before other claims. Property always subject. —Taxes shall be paid before any other debt, lien, or claim whatso-

ever, and the property returned, or held at the time of returning them, or thereafter, shall always be subject." Code, § 92-5707. *Decatur Building & Loan Association* v. *Thigpen*, 173 *Ga.* 364 (160 S. E. 387) ; *Bibb National Bank* v. *Colson*, 162 *Ga.* 471 (134 S. E. 85). Nor was it error for the court to refuse to dismiss the levy on the third ground of the motion, "That if said fi. fa. was to be levied on land that had been conveyed by defendant to claimant, there was included in said conveyance vacant land that should have been seized and exhausted before levying on the improved land that was levied on under said tax execution."

In an amendment to the claim filed by Mrs. Hardin it was alleged : "That said fi..fa. should not proceed, for the reason that it is barred by the statute of limitations, and is inoperative against the property of claimant levied on, for the reason that she bona fide and for a valuable consideration purchased the property levied on, and has been in the possession thereof for more than four years prior to the purported levy of said fi. fa." The order of the judge in ruling on the motion for a directed verdict recited : "Claimant has moved that a verdict holding the land levied on not subject to said tax execution be directed on the ground that under the evidence in the said case, considered in the light of the provisions of section 5950 of the Code of 1910 [Code of 1933, § 110-511] claimant has acquired title to said land freed of the lien of said tax execution; and said motion is hereby sustained solely on said ground."

Counsel for the tax-collector contends that by the quitclaim deed from Roland Mrs. Hardin acquired only the equity of the grantor in the property conveyed; that the legal title was already in her under a previous security deed executed to her by Roland; that as the evidence conclusively showed that the security was worth less than the debt, she received nothing by reason of the quitclaim deed; and that Code, § 110-511, has no application in this case. It appears from the evidence that Roland owed Mrs. Hardin a debt of about $21,000, secured by a deed conveying certain real estate and a stock of merchandise worth $5000 or $6000, that she surrendered to him the notes she held evidencing his indebtedness, and surrendered to him the stock of goods, in consideration of his quitclaim deed to the land embraced in her security deed, which land was valued at from $8000 to $15,000. We think that under the

ruling of this court in *Johnson* v. *Oliver,* 138 *Ga.* 347 (2) (75 S. E. 245), that "If a debtor bona fide conveys land to his creditor in payment and discharge of an existing debt, this constitutes such a valuable consideration as falls within the" Civil Code of 1910, § 5950 (1933, § 110-511), Mrs. Hardin paid such a valuable consideration for the land described in the quitclaim deed as is contemplated by the Code section. In *Citizens Mercantile Co.* v. *Easom,* 158 *Ga.* 604, 610 (123 S. E. 883, 37 A. L. R. 378), it was held: "The payment of a debt secured by deed to land revests in the grantor in such deed such interest and title therein as can be levied upon under an execution issuing upon a judgment junior in date to such deed, without a reconveyance of the land to the grantor, and, in case of cancellation, without the record of the cancellation of the security deed." It was said in the opinion: "What we hold is that payment of the debt. secured by such deed vests in the grantor a perfect title to the land thereby conveyed." If payment of the secured debt "vests in the grantor a perfect title," it would seem that such grantor could make an absolute conveyance thereof, as was purported to be done in this case.

In *Rodgers* v. *Elder,* 108 *Ga.* 22, 25 (33 S. E. 662), it was ruled: "On the trial of an issue as to whether one is a bona fide purchaser of property from a defendant in fi. fa., as contemplated by section 5355 of the Civil Code, it is not error for the judge to refuse to charge the jury to the effect that if the purchaser had knowledge of the existence of the judgment at the time he bought the property and promised the defendant in fi. fa. to pay the judgment, his possession of the property for four years did not release it from the lien of the judgment; it not affirmatively appearing in such trial that the promise was made prior to or cotemporaneously with the purchase, nor that there was any consideration for such promise, and it further not appearing that the plaintiff in fi. fa. ever knew of or acted upon the same. The fact of such knowledge of the existence of the judgment is a matter for the jury to consider, under all the circumstances of the case, in determining whether or not the purchase was in good or bad faith." In the opinion it was said: "Whether or not a knowledge on the part of a purchaser of the existence of a judgment would per se, under section 5355 of the Civil Code, prevent a vendee of property from being a bona fide purchaser thereof, so as to release it from the lien of

the judgment after four years possession, was for some time an open question in this court. It was held in *Sanders* v. *McAffee,* 42 *Ga.* 250, that such knowledge by the purchaser of the existence of the judgment at the time did not make the transaction fraudulent, so as to prevent the operation of the four-year period of limitation provided for in the statute above mentioned. In that case Warner, J., dissented. In *Phillips* v. *Dobbins,* 56 *Ga.* 617, the contrary was held by a majority of the court, who construed the words of the statute to mean that no person, in the sense of the section cited, is a bona fide purchaser who has actual knowledge of the judgment, and that four years' possession will not protect a purchaser with such actual notice. In that case Jackson, J., dissented. In *Prater* v. *Cox,* 64 *Ga.* 706, it was again decided by a majority of this court that such notice by the purchaser of the existence of a judgment prevented the lien thereof from being released after four years' possession of the property. Jackson, J., again dissented, adhering to the reason given by a majority of the court in *Sanders* v. *McAffee,* supra, and adhering to his dissenting views in *Phillips* v. *Dobbins,* supra. In *Broughton* v. *Foster,* 69 *Ga.* 712, it was ruled that notice to a purchaser of a subsisting judgment against the property was only prima facie evidence of mala fides, and that the purchaser might rebut such presumption by showing that he acted in good faith towards the judgment creditor. Crawford, J., dissented. Thus the matter stood when the question again came before this court in *Danielly* v. *Colbert,* 71 *Ga.* 218, when it was decided by a unanimous bench that a person may be a bona fide purchaser of land notwithstanding he purchased with notice of the lien of a judgment. To the same effect is the decision in *Sluder* v. *Bartlett,* 72 *Ga.* 463, which was likewise by a unanimous bench. We may now consider it as the settled rule of this court, that such knowledge on the part of a purchaser is merely a circumstance for consideration by the jury, in connection with all the other evidence, in determining whether or not the purchaser acted in good faith when he bought the property. It is therefore not a question of law for the court to decide, and to instruct the jury that such knowledge would amount to fraud is error. See *Hale* v. *Robertson,* 100 *Ga.* 168 (27 S. E. 937)." In the case at bar it appeared that H. H. Hardin represented his wife, the claimant, under a power of attorney, in her transactions with Roland, and that he

knew that the 1927 tax execution against Roland was unpaid at the time Mrs. Hardin took the quitclaim deed and surrendered her claim against Roland. It also appeared that Oglethorpe County was indebted to both Hardin and his wife for money loaned to the county by them; and the county commissioner related some conversations had with Hardin, indicating that Mrs. Hardin was going to credit on the obligations she held of the county the amount of the Roland fi. fa. Mr. Hardin testified that this agreement related only to taxes due by Mrs. Hardin on land other than that which was conveyed to her by Roland, and it is not clear when such agreement, if made, was entered into, whether before or after the quitclaim deed was executed by Roland to Mrs. Hardin.

The act approved October 13, 1887 (Ga. L. 1887, p. 23), was codified §§ 890 and 891 in the Code of 1895, §§ 1147 and 1148 in the Code of 1910, and §§ 92-7701 and 92-7702 in the Code of 1933. These sections were considered by this court in *Central Railroad & Banking Co.* v. *Wright,* 124 *Ga.* 596 (53 S. E. 251). One of the questions for decision was whether the State, by waiting for more than seven years to issue tax executions after such executions could lawfully have been issued, could then issue them. The Code sections cited are as follows: § 92-7701 [§ 890]: "Tax execution dormant, when.—All State, county, city, or other tax executions, before or after legal transfer and record, shall be enforced within seven years from the date of their issue; or within seven years from the time of the last entry upon the tax execution by the officer authorized to execute and return the same, if said entry is properly entered by said officer upon the execution docket and books in which said entries are required to be made in cases of entries on executions issued on judgments." § 92-7702: "Laws as to judgments applicable to tax executions.—All laws in reference to a period of limitation as to ordinary executions for any purpose, or to the length of time or circumstances under which they lose their lien in whole or in part, are applicable to tax executions." The ruling of the majority of this court was: "The act of 1887 (Pol. Code, §§ 890, 891), when construed as a whole, provides a statute of limitation against the right of the State and its subordinate public corporations to enforce a lien for taxes. Such a lien is barred not only by a failure to have the proper entries made

on the tax execution and recorded as required by the act, but also by a failure to issue the tax execution within seven years from the date that such execution may lawfully be issued. The lien of the State or its subordinate public corporations is to this extent placed, by the act above referred to, fully under the operation of the 'dormant-judgment act.'" Candler, J., dissenting, said: "Sections 890 and 891 of the Political Code interpose a bar to the enforcement of claims for taxes only after they have been placed in execution, and do not apply to the State's claim for taxes before an execution has been issued." In the majority opinion it was said: "Statutes of limitations are statutes of repose. They are intended to relieve against the hardships inevitably incident to the enforcement of demands of long standing, when the lapse of time would necessarily place the person against whom they are enforced at a disadvantage as to their defenses. In interpreting the act of 1887, the purpose of such a statute must be kept prominently in view. Construing this act as a whole, its language indicates that the purpose of the lawmaking power was to place the State, in regard to its claim for taxes, in the same position that a plaintiff in a judgment would be placed as to the enforcement of a right upon which a judgment was founded. While the statute uses the word 'execution' and not the word 'judgment,' there can be no legitimate escape from the conclusion that the legislative intent was to bring the tax judgment of the State within the dormant-judgment law applicable to cases of individuals. The entries required to be made as [to] tax executions are entries similar to those required to be made on 'executions issued on judgments.' That the word 'execution' is to be interpreted in the sense of judgment becomes clear when we refer to the statutes evidently referred to by the expression, 'All laws in reference to a period of limitation as to ordinary executions.'" Apparently both the majority and minority of the court agreed that after the issuance of executions for taxes the State stood in no better position than a plaintiff in execution based on an ordinary judgment would stand.

Even if Mrs. Hardin acted in the utmost good faith in purchasing from Roland the land involved in this levy, this purchase of itself did not relieve the land from liability to be subjected to the tax execution against Roland. The effect of the alienation by Roland was to make it incumbent upon the tax-collector to have

the execution levied within four years from the time of the alienation, if it was desired to subject the property alienated. The decisions in *Georgia Refinancing & Loan Co.* v. *Marietta,* 178 *Ga.* 761 (174 S. E. 346), and *Real Estate Loan Co.* v. *Union City,* 177 *Ga.* 55 (169 S. E. 301) relied on by counsel for the tax-collector, do not support his contention that the facts in the instant case do not bring Mrs. Hardin within the protection of the Code, § 110-511. These decisions would be applicable if the execution against Roland had been levied before Mrs. Hardin had been in possession of the land involved for more than four years. The holding in the *Union City* case was that "Where, after the death of the grantor in a security deed, the equity of redemption is set apart as a year's support to his widow and minor children, such equitable interest would not be liable for any part of the taxes which had previously accrued [citations]; but the interest represented by the legal title would not for that reason be relieved of the tax lien, and may be sold to satisfy the entire amount of the tax claim." The ruling in the *Marietta* case was to the same effect. Neither case involved any question of bar or limitation, or the right of an alleged bona fide purchaser to the benefit of § 110-511 of the Code.

We conclude that the court erred in directing the verdict for the claimant, inasmuch as it can not be said that a verdict in her favor was demanded. It follows that the court erred in overruling the motion for new trial, wherein error was assigned on the direction of such verdict.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*