ROYAL INDEMNITY COMPANY *v.* MAYOR &c. OF CITY OF SAVANNAH *et al.*

384

No. 17966. ARGUED SEPTEMBER 8, 1952—DECIDED OCTOBER 15, 1952—
REHEARING DENIED NOVEMBER 13, 1952.

*Connerat, Dunn, Hunter, Cubbedge & Houlihan,* for plaintiff
in error.

*Aaron Kravitch, Casper Wiseman, Sidney L. Raskin, Lawrence J. Dwyer, Creech & Creech, Edward M. Hester, Brannen, Clark & Hester, David R. Elmore* and *W. Colbert Hawkins,* contra.

CANDLER, Justice. The judgment complained of was rendered in an equitable suit which Mrs. Audrey Graham filed in the Superior Court of Chatham County on April 27, 1949, against Edenfield Oil Company, a corporation, and J. R. O'Donnell, an individual. Upon her petition—alleging that the defendant company was indebted to her in a stated amount, that the company was insolvent, and that the defendant O'Donnell, an officer of the defendant company, was mismanaging its affairs—the court, on prayers therefor, restrained the defendants from selling, encumbering, or releasing to lienholders, any of the company's property, subsequently appointed a permanent receiver for the company, and later passed an order requiring all creditors of the company to intervene therein and restrained them from proceeding otherwise. Among the several creditors who intervened were Mrs. I. O. Parker, The Mayor and Aldermen of the City of Savannah, Royal Indemnity Company, and other

judgment creditors. Mrs. Parker, in her petition for intervention, alleged: that she filed a suit in the Superior Court of Chatham County, Georgia, against the defendants Edenfield Oil Company and J. R. O'Donnell; that a judgment was rendered in her favor against the defendants on June 13, 1949, for $3350.02 principal, $321.87 interest, $367.18 attorney fees, and for costs of suit; that an execution was pursuantly issued and entered on the General Execution Docket of Chatham County on June 13, 1949; and that no part of her judgment had been paid. Later, by amendment, Mrs. Parker alleged that a credit of $2572.55 had been made upon her judgment, reducing it in amount to $1466.52. The Mayor and Aldermen of the City of Savannah by intervention alleged: that the defendant company was indebted to the City of Savannah for past-due city taxes as follows: 1947 Specific tax (balance)—Execution No. 282—$200.00; 1948 Specific tax—Execution No. 291—$501.00; 1949 Specific tax—Execution No. 274—$501.00; 1948 Personal property tax—Execution No. 1533—$52.75; and 1949 Personal property tax—Execution No. 1499—$41.25; and that executions numbers 282 and 291 were entered on the General Execution Docket of Chatham County on April 12, 1949. And this intervenor alleged also that the city's lien for such taxes had priority over all other liens upon the company's property, except the lien asserted by the United States for taxes due it by the defendant company. Royal Indemnity Company filed its petition for leave to intervene on April 30, 1949, and alleged that the intervenor, on November 15, 1947, signed, as surety for Edenfield Oil Company, a motor-fuel distributor's bond in favor of the State of Georgia for $6000, which was increased to $9000 on February 16, 1948; that Edenfield Oil Company defaulted in its payments to the State for gasoline and kerosene taxes' as collected by it during the months of September and October, 1948, in the amount of $7379.02; that the intervenor, upon demand therefor, paid the State of Georgia the full amount for which its principal was in default on November 29, 1948, taking the State's receipt therefor; that the taxes so collected by its principal were in the nature of trust funds belonging to the State of Georgia; and that the intervenor, because of such payment,

became subrogated to the rights and position of the State of Georgia, and is therefore entitled to a lien prior to the claims of all other creditors of the insolvent company, except the liens of the United States for taxes. The intervenor prayed that its intervention be allowed, and that its lien upon the defendant company's property be set up and established. Subsequently, on August 30, 1949, Royal Indemnity Company amended its petition for leave to intervene and alleged: that, after filing its petition for leave to intervene, it filed a suit in the City Court of Savannah on June 20, 1949, against Edenfield Oil Company; that a judgment was rendered by that court in favor of the intervenor and against Edenfield Oil Company on July 11, 1949, for $7379.02 principal, $318.44 interest to date of judgment, and $12.85 costs of suit, and the judgment so rendered was by its terms made a special lien upon all property of the defendant from November 29, 1948; and that an execution was pursuantly issued and entered on the General Execution Docket of Chatham County on July 12, 1949. There was a prayer that the intervenor's judgment lien be set up, established, and given priority in accordance with the terms of its judgment. By consent of the parties, the court referred the case to the receiver previously appointed and conferred upon him all of the powers which an auditor may lawfully perform. The receiver, acting in the capacity of an auditor, after affording the parties an opportunity to be heard, among other findings, found, and accordingly reported to the court: that the five tax executions in favor of The Mayor and Aldermen of the City of Savannah, the balance due upon Mrs. Parker's judgment, and the amount due upon those judgments obtained by other intervening creditors prior to July 11, 1949, had priority over the claim and judgment of Royal Indemnity Company, and should for that reason be paid before any disbursement from the defendant company's assets was made to Royal Indemnity Company. Within the time allowed, Royal Indemnity Company filed exceptions, both at law and in equity, to the findings and report of the receiver, and alleged that his findings and report should not be approved by the court because: (1) the receiver had found that this intervenor was not entitled to priority as a surety paying a tax debt of its principal to the State

of Georgia, whereas at law and in equity, it was entitled to such priority; (2) the receiver had found that this intervenor was not entitled to priority as of November 29, 1948, as set up and established by the judgment rendered in the City Court of Savannah on July 11, 1949; (3) the receiver had found that this intervenor was not entitled to priority because no tax execution had been issued by the State Revenue Commissioner of Georgia and recorded in the office of the Clerk of the Superior Court of Chatham County, whereas, there being no provision of law for an execution to issue where the taxes were paid by the surety upon demand by the State, the filing of an execution was not essential, and, accordingly, equity should decree that the intervenor is entitled to priority from November 29, 1948, the date it paid the taxes due by its principal; (4) the receiver had failed to find, as he should have, that Edenfield Oil Company was in fact a tax collector for the State of Georgia, and the taxes collected by it for the State were trust funds, and that the intervenor, as surety for Edenfield Oil Company, on the payment of such taxes to the State, upon demand that it do so, was subrogated to all the rights of the State against the property of the defaulting principal as of November 15, 1947, the date of its bond to the State of Georgia; (5) the receiver had found that the balance due on Mrs. I. O. Parker's judgment, as rendered in the Superior Court of Chatham County on June 13, 1949, in her suit against Edenfield Oil Company upon a promissory note, had priority over the claim and judgment of this intervenor; (6) the receiver had found that those other creditors of Edenfield Oil Company who obtained common-law judgments against it prior to July 11, 1949, had priority over the claim and judgment of this intervenor; and (7) the receiver had found that the several tax executions in favor of The Mayor and Aldermen of the City of Savannah had priority over the claim and judgment of the intervenor, whereas the intervenor, by payment on November 29, 1948, of the taxes due the State of Georgia by the intervenor's defaulting principal, had become subrogated to the rights of the State, and its claim was therefore entitled to priority as taxes due the State. Except as to the priority which the receiver found should be given to tax executions numbers 1533, 1499, and 274 in favor the City of Savannah, the trial

judge overruled the exceptions, approved the receiver's report and entered a final judgment and decree. To that judgment Royal Indemnity Company excepted and sued out a writ of error to this court.

■  The "Motor-Fuel Tax Law" of 1937 (Ga. L. 1937, pp. 167, 174; Code, Ann., § 92-1403) amended Title 92 of the Code of 1933, and imposed an excise tax upon all distributors of motor fuel and/or kerosene, at the rate of six cents per gallon upon the sale or use of motor fuel by them within the State, and at the rate of one cent per gallon upon the sale or use of kerosene by them within the State. Code, Ann., § 92-1406-A, which was codified from the Motor-Fuel Tax Law of 1937, provides: "Every distributor [of motor fuel and/or kerosene] shall file with the Comptroller General a surety bond (1) in the approximate sum of two times the average monthly motor fuel and/or kerosene tax due by such distributor during the next preceding 12 calendar months: Provided, that in no case shall the bond be less than $1,000 nor more than $25,000, in the discretion of the Comptroller General, (2) with a surety company approved by the Comptroller General as surety thereon, (3) upon which such distributor shall be the principal obligor and the State of Georgia shall be the obligee, (4) conditioned upon the prompt filing of true reports and the payment by such distributor to the Comptroller General of the State of Georgia of any and all motor fuel and/or kerosene excise taxes which are now or which hereafter may be levied or imposed by the State of Georgia, together with any and all penalties and/or interest thereon, and generally upon faithful compliance with the provisions of this Chapter." By an act of the legislature which was approved on January 3, 1938 (Ga. L., Ex. Sess., 1937-38, pp. 77, 80; Code, Ann. Supp., § 92-8405), the Department of Revenue was created, and the State Revenue Commissioner was vested with all of the power and authority and required to perform all of the duties relating to matters of taxation theretofore vested in the Comptroller-General, the State Revenue Commission, and in any State administrative officer or State Department. And section 42 of the act passed by the legislature at the extra session of 1937-38 (Code, Ann. Supp., § 92-8444) also provides: "Liens for taxes, whether ad valorem, specific, or occupation, due the State, any

county thereof, or municipal corporation therein, shall cover the property of taxpayers liable to tax, from the time fixed by law for valuation of the same in each year until such taxes are paid, and the property of tax collectors and their sureties from the time of giving bond until all the taxes for which they are responsible shall be paid. Such liens for taxes are hereby declared superior to all other liens, and shall rank among themselves as follows: first, taxes due the State; second, taxes due counties of the State; third, taxes due school or other special tax districts of the State; fourth, taxes due to municipal corporations of the State: Provided, however, that the lien for taxes imposed by the provisions of the Motor-Fuel Tax Law, approved March 18, 1937, . . shall not have priority as against any bona fide mortgagee, holder or transferee of a deed to secure debt, pledgee, judgment creditor, or purchaser of or from persons liable for the tax imposed by said Act, where the rights of such mortgagee, holder or transferee of a deed to secure debt, pledgee, judgment creditor or purchaser shall have attached prior to the time notice of such lien shall have been filed by the State Revenue Commissioner in the office of the Superior Court of the County in which the principal place of business or in the County where the property of such person liable for payment of the Motor-Fuel Tax is located." The legislature, by an act passed in 1943 (Ga. L. 1943, p. 339), further amended the "Motor-Fuel Tax Law" by providing: "Every distributor of motor fuels defined in this Act shall add the amount of taxes levied and assessed by this Chapter to the price of such motor fuels, it being the purpose and intent of this provision that the tax levied under the provisions of this Chapter is in fact a levy on the consumer, and the levy on distributors as specified in said Chapter is merely as agent of the State for collection of said tax." As shown by the record in this case, Edenfield Oil Company, a distributor of motor fuels with its place of business in Chatham County, on November 15, 1947, executed and delivered to the State of Georgia its bond for $6000, which was later, on February 16, 1948, increased to $9000, conditioned upon its faithful compliance with the duties imposed upon it, as a distributor of motor fuels by the motor-fuel tax law. Its bond was signed by Royal Indemnity Company as surety. As such distributor, the

principal defaulted in its payments to the State of Georgia for motor-fuel and kerosene taxes as collected by it from consumers during the months of September and October, 1948, in the amount of $7379.02. The State Revenue Commissioner filed no notice of the State's lien in the office of the Superior Court of Chatham County, or elsewhere; but, upon demand by the State Revenue Commissioner for the amount of taxes in default, Royal Indemnity Company, as surety, on November 29, 1948, paid to the State of Georgia the amount for which its principal was in default, taking the State's receipt therefor. In these circumstances, Royal Indemnity Company, as such surety, contends that it was, on November 29, 1948, subrogated to the rights of the State of Georgia, and, consequently, has a lien upon Edenfield Oil Company's property superior to the liens of its other creditors. To this we cannot agree. While it is true, as contended, that a surety who has paid the debt of his principal is subrogated, both at law and in equity, to all of the rights of the creditor, and, in a controversy with other creditors, ranks in dignity the same as the creditor whose claim he paid (Code, § 103-501; *Livingston* v. *Anderson*, 80 *Ga.* 175, 5 S. E. 48), yet, under the facts of this case as they are disclosed by the record, Royal Indemnity Company, though subrogated to the rights of the State of Georgia as of November 29, 1948, does not have a lien upon Edenfield Oil Company's property, because of subrogation, equal in dignity to that of the insolvent's judgment creditors; and this is true because the State Revenue Commissioner filed no notice of the State's lien upon the insolvent's property in the office of the Clerk of the Superior Court of Chatham County, or elsewhere, as required by the amended Motor-Fuel Tax Law, before judgments were obtained by those creditors which the receiver found had prior liens. On the theory of subrogation, we, therefore, hold that the judgment complained of is not erroneous, as contended.

■ We hold, as the receiver found, that the common-law judgment which Royal Indemnity Company obtained in the City Court of Savannah on July 11, 1949, created a lien in its favor inferior in rank to the liens created by those common-law judgments previously rendered in favor of various other creditors of Edenfield Oil Company, notwithstanding the fact that Royal

Indemnity Company's judgment contained a recital that "said judgment is hereby made a special lien on all of the property of the defendant from November 29, 1948"; and this is true because, as a matter of law, the lien created thereby attached as of the date of the judgment, and the court rendering it had no jurisdiction or power to give it any retroactive effect. Code, § 110-507; *Rodgers* v. *Evans*, 8 *Ga.* 143 (52 Am. D. 390); *Morgan* v. *Sims & Nance*, 26 *Ga.* 283; *Baxter* v. *Bates*, 69 *Ga.* 587; *Hill* v. *Haas & Weiss*, 73 *Ga.* 122; *Jordan* v. *Callaway & Co.*, 138 *Ga.* 209 (75 S. E. 101); 31 Am. Jur. 71, § 408. A lack of jurisdiction or power in a court entering a judgment always avoids the judgment, and this is especially true as it relates to and affects the rights of other parties; such action is a mere usurpation of power by the court and may be declared void collaterally without any direct proceedings to revise it. *Prescott* v. *Bennett*, 50 *Ga.* 267. And since the court rendering the judgment here involved had no jurisdiction or power to give it any retroactive effect, its action in attempting to do so was a nullity; and such action, being therefore void, is subject to collateral attack by anyone whose rights are affected thereby, whenever and wherever asserted. Code § 110-709; *Western Union Telegraph Co.* v. *Taylor*, 84 *Ga.* 408 (11 S. E. 396, 8 L.R.A. 189); *Deck* v. *Shields*, 195 *Ga.* 697 (25 S. E. 2d, 514); 31 Am. Jur. 184, § 583.

■ The liens created by tax executions numbered 282 and 291, which were issued against Edenfield Oil Company for tax due the City of Savannah for the years 1947 and 1948, and which were entered on the execution docket of Chatham County on April 12, 1949, are superior in rank to the lien created by the common-law judgment which Royal Indemnity Company obtained in the City Court of Savannah against Edenfield Oil Company on July 11, 1949, and they were properly given such priority. Code, §§ 92-5707, 92-5708, 92-7702; *Reynolds* v. *Hardin*, 187 *Ga.* 40 (200 S. E. 119); *Darby* v. *DeLoach*, 190 *Ga.* 499 (9 S. E. 2d, 626); *Suttles* v. *Dickey*, 192 *Ga.* 382 (15 S. E. 2d, 445).

For the reasons stated in the foregoing divisions of this opinion, the trial judge did not err in rendering the judgment complained of.

*Judgment affirmed. All the Justices concur.*